GOLDSMID, President of the Bank of Watertown, *vs.* THE LEWIS COUNTY BANK.

To enable the holder of a bank bill, or negotiable paper, to retain the same, against the true owner, he must have come by it in the usual course of his business, and for a full and fair consideration. He must have parted with something on the faith of the note or bill.

It was agreed between the Lewis County Bank and the Bank of Watertown, that the former should send $10,000 of its circulating notes to the latter, and that the Bank of W. would return coin for it. The notes were accordingly counted out, at the L. Co. Bank, sealed up, directed to the Bank of W. and delivered to a messenger, to be carried by him to the Bank of W. One M. obtained possession of the packages, opened them, and placed between the same a letter signed by him, addressed to the cashier of the Bank of W., directing him to apply $1500 of the money in payment of a draft drawn by M., then held by said bank. M. then resealed the packages, and addressed the same to the cashier of the Bank of W.; who, on receiving the bills, took $1500 thereof, and applied it in payment of M.'s draft, which he cancelled; giving the L. Co. Bank credit for the residue of the money. The letter of M. was written and sent without the knowledge or consent of any officer of the L. Co. Bank; and that bank objected to the application made of the $1500, as soon as informed of it. *Held*, that the Bank of W. acquired no title to the $1500; and that having repaid it to the L. Co. Bank, under an agreement reserving the question as to their right thereto, they could not recover it back.

JOHN W. MARTIN, on the 2d day of August, 1845, drew a bill of exchange on Andrew W. Doig, for $1500, payable to the order of William H. Angel, who was then the cashier of the Watertown Bank, and he indorsed it, as he testified, not to become a party to the bill, and it was discounted by the Watertown Bank. On the 19th of August, 1845, the Lewis County Bank, apprehending a call for more specie than it had in its vaults, applied by its agent, David M. Bennett, to William H. Angel for assistance, and they went to Mr. Davenport's, who with the said Bennett had been appointed a committee to procure assistance for the Lewis County Bank. After consulting with him, they, at the suggestion of William H. Angel, called upon the said John W. Martin, who had before been an active officer in the Lewis County Bank, but was not then one of its officers. After consulting with him some time, and nothing

having been agreed on, the said Bennett said to William H. Angel: "If you come to any determination and conclude upon any plan for the relief of the bank, you can communicate through Judge Martin, in the morning;" and Angel said he would do so. The next morning John W. Martin told Bennett that Angel had left a proposition "that the Lewis County Bank should that day send $10,000 of its circulating notes to the Bank of Watertown, by a special messenger; that he would return coin for it. That sum would be sent right off, and more from time to time as he could raise it from the use of the bills." "That it would not be necessary to send any letter with the money, as Angel would understand it." The object of this remark doubtless was, that the letter which Martin intended to send and did send, should have the greater effect. Upon receiving this information Mr. Bennett obtained from the cashier of the Lewis County Bank $10,000 of its circulating notes, and procured C. L. Martin to count and seal the bills and direct them to the Bank of Watertown, and deliver them to Daniel Lewis, to take to Watertown. C. L. Martin did count the money, seal the bills, and handed them to the said Lewis, who died in the winter of 1846. C. L. Martin believed that he sealed the bills in two packages of about equal size, and handed nothing else to the said Lewis. According to the testimony of Mr. Angell, the bills when delivered to him were sealed in three packages, and the three packages wrapped together in a newspaper wrapper, which was tied up and addressed in the hand-writing of J. W. Martin, to Wm. H. Angel, Esquire, Watertown, and between the packages there was a letter from Judge Martin, which was not produced on the trial, but the substance of it was, as Mr. Angel testified, a direction to him to apply $1500 of the money in payment of the said acceptance of Doig, and to use the balance for the purpose of raising coin; and that he took from one of the said packages $1500, and, as he testified, applied the same in payment of the said acceptance, and cancelled it, by cutting it and putting it amongst cancelled papers; but it was retained in the bank; and the residue, $8500, was passed to the credit of the Lewis County Bank. The said letter was written and forwarded

Goldsmid *v.* Lewis County Bank.

by John W. Martin, without the knowledge or consent of any officer of the Lewis County Bank. He was sworn as a witness on the part of the plaintiff, but he did not pretend that he had any authority for writing the letter; but, on the contrary, testified that all the money forwarded belonged to the Lewis County Bank, and no part of it belonged to him. As soon as the application of the $1500 was known to the officers of the Lewis County Bank, it was objected to, and they claimed that the Watertown Bank was bound to refund it. In September, 1846, Lyman R. Lyon proposed to purchase of William H. Angel all his stock in the Lewis County Bank, at ten dollars a share, on condition that the Watertown Bank would pay their debt (the said $1500) to the Lewis County Bank, to which Angel agreed, reserving to the Watertown Bank all its rights to that sum—and that sum, with interest, was paid to the Lewis County Bank. And this action was commenced to recover that sum. After the action was commenced and referred, the attorneys for the parties stipulated, amongst other things, " that all the account and claims of the respective parties are settled and disposed of, except a difference in the account of each party of $1500, which accrued about the 20th of August, 1845. If the $1500 be found in favor of the plaintiff, by the referees, they may report in favor of the plaintiff for $1580,36, with interest from the 21st of September, 1846. If the $1500 is found in favor of the defendants, by the referees, they may report in favor of the defendants $14,64, with interest from September 11th, 1846." Two of the referees, on the 16th day of January, 1851, made a report in favor of the plaintiff for $2061,72, and upon a case a motion was made to set aside the report.

*T. C. Chittenden*, for the plaintiff.

*Ward Hunt*, for the defendants.

*By the Court*, CADY, J. The only question seems to be, whether the unauthorized and fraudulent directions written by John W. Martin, and delivered to William H. Angel with the

Goldsmid *v.* Lewis County Bank.

money of the defendants, authorized the Bank of Watertown to retain the money, or in other words, did the bills become the property of the Watertown Bank?

The counsel for the plaintiff has referred to cases for the purpose of showing that "if negotiable paper be stolen, and is received from the thief, in good faith and for value, the holder gets title, and will be protected." Cases which establish that rule would seem to be very applicable to this case in a moral point of view; for there is not a very marked difference between a theft and the gross fraud which was committed in this case. Many of the cases upon the subject are referred to and commended in *Bay* v. *Coddington,* (5 *John. Ch. Rep.* 54,) and they all show that to enable the holder to retain a bank bill or negotiable paper against the true owner, he must have come by it in the usual course of his business, and for a full and fair consideration. He must have parted with something on the faith of the note or bill; but in this case the Bank of Watertown parted with nothing. It paid no consideration for the $1500 in the bills of the Lewis County Bank. All that was done was to cut the draft or bill and put it amongst cancelled papers; but no party to that draft was discharged. Martin could not set up his own fraud to discharge him, nor could Doig escape responsibility as acceptor of the bill; and as it was the duty of William H. Angel to see that payment was demanded on the draft, and notice given of non-payment, he could not alledge the want of a demand and notice of non-payment in his own discharge. The Bank of Watertown has a perfect remedy on the draft, unless that remedy has been lost by its own negligence; and if its remedy has been so lost, it furnishes no reason why it should be allowed to recover in this case. I am therefore of opinion that the report should be set aside, and the cause be referred back to the referees; the costs to abide the event of the suit.

Judgment accordingly.

[SARATOGA GENERAL TERM, January 5, 1852. *Willard, Hand* and *Cady,* Justices.]