## HALL vs. WILSON.

Upon grounds of public policy growing out of the commercial necessities and wants of the community, a holder of negotiable paper may, under certain circumstances, recover upon it, notwithstanding any defect or infirmity in the title of the person from whom he derived it; even though such person may have acquired it by fraud, theft or robbery.

But to entitle the holder of negotiable securities which have been obtained and put in circulation fraudulently, feloniously, or without consideration, to the benefit of this rule, he must have become such holder in good faith, for a full and fair consideration, in the usual course of business, and without notice of the defect or infirmity in the title.

W. made a promissory note for $120, payable to U. or bearer. The note was never delivered, but was placed by the maker in his desk as a place of deposit, whence it was stolen by B., a laborer in his employ, and was by him transferred to one Bigelow, for $115. Before the note became due, Bigelow transferred it to the plaintiff. *Held* that the plaintiff could not recover thereon; the note never having had a legal inception, for want of a delivery; the transfer to Bigelow being void for usury; and the note not having been taken by him bona fide for a full and fair consideration and in the usual course of his business.

A promissory note has no legal inception or vitality, until it is *delivered* to some person as evidence of a subsisting debt.

Where a note is not a perfect or available security in the hands of the holder, the discounting or purchase of the same at a greater discount than the legal rate renders the transaction usurious, and the note void; and this notwithstanding the transaction is in form a purchase of the note of a person other than the maker, who represents it to be a business note, and valid in his hands, and whether the party transferring has authority to do so, or the transfer is tortious.

The ignorance of the person discounting the paper that it is unavailable in the hands of the party offering it for discount, will not affect the question.

If the note is invalid in the hands of the seller, the maker can avail himself of the defense of usury in the negotiation of the note, and the defense will be complete upon establishing the fact that it was transferred at a discount greater than that allowed by law.

ACTION against the defendant as maker of a promissory note for $120, dated April 1, 1851, and payable on the 1st day of April thereafter, to L. Upson or bearer. The note was made for the purpose of taking up another note of the same amount, made by the defendant and held by the payee Upson, but was never delivered. It was placed by the maker in his desk as a

Hall *v.* Wilson.

place of deposit until he could exchange notes with Upson, and was stolen from thence by a laborer in the employ of the defendant, and by him transferred to one Bigelow, about ten o'clock in the evening of June 10, 1851, for $115 paid by Bigelow. Bigelow was not acquainted with the person who transferred the note to him, but was introduced to him by another man, and was told he had been at work for the defendant. Before the note became due, Bigelow transferred it to the plaintiff, his brother-in-law. The cause was tried without a jury, and the judge rendered a judgment for the plaintiff for the amount paid by Bigelow, with interest, and from this judgment the defendant appealed.

*John Sessions,* for the appellant.

*L. R. Morgan,* for the respondent.

*By the Court,* W. F. ALLEN, J. The justice by whom this action was tried held and decided that the plaintiff was not a holder of the note in suit for value, and rested his decision entirely upon the title of Bigelow derived from Bundy who stole the note. The note, at the time it was stolen, was imperfect, never having been delivered by the maker to the payee, or any other person, or in any way put in circulation by him. The mere act of signing the paper, without a delivery of it as evidence of a subsisting debt, did not make it the note of the signer. (*Burrage* v. *Lloyd,* 1 *Exch. Rep.* 32. *Brind* v. *Hampston,* 1 *M. & W.* 365. *Marston* v. *Allen,* 8 *Id.* 494. *Cox* v. *Troy,* 5 *B. & Ald.* 474.) In the hands of Bundy, or any person receiving it from him with notice of the defect in his title, the note would have been invalid. If it ever had an inception as the promissory note of the defendant, it was at the time and by means of its transfer to Bigelow.

Upon grounds of public policy growing out of the commercial necessities and wants of the community, a holder of negotiable paper may, under certain circumstances, be entitled to recover upon it, notwithstanding any defect or infirmity in the title of

the person from whom he derived it; even though such person may have acquired it by fraud, theft or robbery. (*Story on Prom. Notes*, §§191, 2.) The rule is an exception to the general rule that the vendor of property or rights in action can convey no greater right or interest than he has, in the thing transferred, and ought not to be carried beyond the necessity that created it, to wit, the commercial and business necessities of the public. (*Per Ch. in Bay* v. *Coddington,* 5 *John. Ch. R.* 54.) To entitle the holder of negotiable securities which have been fraudulently, feloniously, or without consideration, obtained and put in circulation, to the benefit of this rule, he must have become such holder in good faith for a full and fair consideration, in the usual course of business, and without notice of the defect or infirmity in the title.

1. He must have acquired the title in good faith. The decisions in England upon this branch of the rule have vacillated from time to time. It was at one time held that a person who had taken a bill under circumstances which should have excited the suspicion of a prudent and careful man could not retain it as against the rightful owner, or recover against the parties to it. (*Gill* v. *Cubitt,* 3 *Barn. & Cress.* 466. *Snow* v. *Peacock,* 2 *C. & P.* 215; *S. C. on a rule nisi for new trial,* 3 *Bing.* 393. *Down* v. *Halling,* 4 *B. & C.* 330. *Beckwith* v. *Corrall,* 2 *C. & P.* 261. *Strange* v. *Wigney,* 6 *Bing.* 677.) It was subsequently held that gross negligence alone would defeat a holder of a bill for value; that the rule laid down and settled by the cases cited was quite too indefinite and uncertain for the proper protection of the commercial dealings of the public, and gross negligence was adopted as the rule by which the rights of the holder were to be determined. (*Crook* v. *Jadis,* 5 *B. & Ad.* 909. *Backhouse* v. *Harrison. Id.* 1098.) Thus overruling *Gill* v. *Cubit,* and the cases depending upon and following it. Finally, in *Goodman* v. *Harvey,* (4 *A. & E.* 870,) the question of negligence was entirely thrust aside, except so far as it tended to show *mala fides.* Lord Denman, C. J. says, "Gross negligence may be evidence of *mala fides,* but is not the same thing." We have shaken off the last remnant of the contrary doctrine.

Hall v. Wilson.

When the bill has passed to the plaintiff without any proof of bad faith in him, there is no objection to his title. The same doctrine was reiterated in *Uther* v. *Rich*, (10 *A.& E.* 784,) and *Arbouin* v. *Anderson*, (1 *A. & E. N. S.* 498,) although the point was not essential to the judgment in those cases. The doctrine of the cases last cited has been adopted and approved by the courts of some of the states of the Union, and I have met with no case in our own courts in conflict with it. So that in the absence of evidence of bad faith in the holder, if he is in other respects within the rule established for the benefit of commercial paper, his title will be upheld. *Solomons* v. *Bank of England*, (13 *East*, 135,) was peculiar in its circumstances, and is consonant with *Goodman* v. *Harvey*.

3. He must have become the purchaser for a full and fair consideration. That he must have become the holder for a valuable consideration, that is, that he must have parted with something of value upon the strength and in consideration of the transfer of the paper, is well settled. A party taking negotiable securities upon a precedent debt, relinquishing nothing of value at the time, or without any consideration, is not a purchaser for a valuable consideration. (*Bay* v. *Coddington*, 5 *John. Ch.* 54.) So a transfer upon an usurious or other illegal consideration will not support the title of the holder. (*Ramsdell* v. *Morgan*, 16 *Wend.* 574. *Keutgen* v. *Parks*, 2 *Sandf. S. C. Rep.* 60.) Although not necessary to the decision of this case, there is ground for saying that the consideration of the transfer must be full and fair, as well as valuable. *Cady, J.* in *Goldsmid* v. *Lewis County Bank*, (12 *Barb.* 410,) says the cases show " that to enable the holder to retain a bank bill or negotiable paper against the true owner, he must have come by it in the usual course of his business, and *for a full and fair consideration*." Chancellor Kent, in *Bay* v. *Coddington*, asserts that the consideration paid or given must be *fair* and valuable. *Thurston* v. *McKown*, (16 *Mass. Rep.* 428,) decides that where a note was obtained by unfair means from the maker, he was still liable to an indorsee who had obtained it bona fide for a *full consideration*, &c. In *Miller* v. *Race*, (1 *Bur.* 452,) which is the

leading case upon this branch of the law, Lord Mansfield laid stress upon the fact that the holder came into the possession of the bill for a *full and valuable consideration*, as well as in the usual course of business.    In all the cases which have come under my notice, in which the title of the holder has been sustained against the rightful owner, the consideration of the transfer has been the full value of the note or bill in controversy.

3.  The note or bill must have been taken by the holder in the usual course of his business.    The rule was adopted for the benefit of commerce, and to secure the free circulation of commercial securities in their accustomed channels, to give parties dealing in commercial paper that confidence and security which is indispensable to the proper prosecution of that business.    In *Miller* v. *Race*, Lord Mansfield makes the fact that the bill was received by the holder "in the usual course and way of his business," very prominent among the circumstances giving validity to his title ; and in *Grant* v. *Vaughan*, (3 *Bur.* 1516,) the same prominence is given to and stress laid upon the same fact. In *Easley* v. *Crochford* (10 *Bing.* 243,) Lord Tindal, C. J. alludes to the fact that in *Snow* v. *Peacock* the note was received by the bankers in the course of their business, and says, " In the present case the defendant's dealings were not of such a nature as to entitle him to greater latitude than a banker at his counter."    The defendant had received upon a bet upon the Derby a £200 bank note which had been stolen two years before, and the plaintiff, from whom it had been stolen, was allowed to recover in twice the amount of the note.    It is true the decision was not put upon the nature of the dealings in which the defendant received the note, but it is quite evident that it influenced the decision, and we are at liberty to infer from the case in connection with the decisions which followed it, that a banker receiving the note under the same circumstances, in the ordinary course of his business, would have been protected in his title. Chancellor Kent, in *Bay* v. *Coddington*, in giving the reasons for his decree against the defendants, assigns as one reason, that " the notes were not negotiated to them in the usual course of business or trade."    And in the same case in the court for the

Hall *v.* Wilson.

correction of errors (20 *John. R.* 651,) Spencer, C. J. says, "Now I understand by the usual course of trade, not that the holder shall receive the bills or notes thus obtained, as securities for antecedent debts, but that he shall take them *in his business* and as payment for a debt contracted at the time." And Judges Spencer and Woodworth appear to deem it essential to cure a defect in the title to negotiable paper, that it should be taken in the usual course of trade, as well as for a valuable consideration. *Peacock* v. *Rhodes,* (1 *Doug.* 633,) and the case in 1 *Salk.* 126 proceed upon the same principle. In the case last cited, it was by reason of the course of trade which created a property in the assignee or bearer that Holt, C. J. upheld the title of the holder of a bank note which had been lost, and transferred to him by the finder. In *Wheeler* v. *Guild,* (20 *Pick.* 545,) Shaw, C. J. says, "The law in regard to bills of exchange and promissory notes is so framed as to give confidence and security to those who receive them for a valuable consideration in the ordinary course of business;" and again, "But these rules are adopted with this limitation, that the party thus taking the note or bill, does it in the ordinary course of trade, when not over due or otherwise dishonored, and without notice." After commenting on the cases, he concludes, "We think the rules deducible from the cases are these; when a party takes a bill transferable by delivery, not over due nor otherwise apparently dishonored, for valuable consideration, in *the usual course of business,* without notice actual or constructive that the holder came by it unlawfully or without title, he will be protected; otherwise not." That the holder received the paper in the usual course of trade or business appears to be as essential to cure a defective title, as that he should pay a consideration for its transfer.

4. It must be taken without notice to him who receives it, of the defect or infirmity of title in him who transfers it. To this proposition no authorities are necessary. The principle is elementary.

The title of Bigelow, (and of consequence the title of the plaintiff under the ruling and decision of the justice, which was

clearly right,) to the note in suit cannot, in my judgment, be protected as one acquired bona fide for a full and fair consideration in the usual course of trade or business. The agreement upon which he obtained the note was usurious and void: a transaction based upon a usurious contract cannot be said to be *bona fide*. And a deposit of goods or transfer of negotiable paper which, untainted by usury, would be valid, will not be sustained if the deposit or transfer is made in pursuance of a contract which is usurious and therefore illegal. (*Ramsdell* v. *Morgan*, 16 *Wend. R.* 574. *Keutgen* v. *Parks*, 2 *Sand. S. C. R.* 60.) This note had no vitality as such upon its transfer to Bigelow. It took its inception (if at all) as a promissory note, and became the evidence of a subsisting debt against the maker in virtue of the dealings between Bundy the thief, and Bigelow, to whom it was transferred. (*Marvin* v. *McCullum*, 20 *John. R.* 288.) It was not a perfect or available security in the hands of Bundy directly from whom Bigelow acquired the title, and in such case it is well settled that the discounting or purchase of the note at a greater discount than the legal rate renders the transaction usurious and the note void, and this notwithstanding the transaction is in form a purchase of the note of a person other than the maker, who represents it to be a business note and valid in his hands, and whether the party transferring has authority to do so, or whether the transfer is tortious as in *Keutgen* v. *Parks*. (*Powell* v. *Waters*, 17 *John. R.* 176. *Munn* v. *Commission Co.* 15 *John. R.* 44, per *Spencer J. at page* 55. *Dowe* v. *Schult*, 2 *Den.* 621.) The ignorance of the person discounting the paper that it is unavailable in the hands of the party offering it for discount, will not affect the question. (*Powell* v. *Waters*, 8 *Cow.* 669.) In distinguishing between a case where the discount of a bill at a higher premium than the legal rate of interest will be upheld as legal by considering it the purchase of a bill already perfect and available; and when it will be illegal as a usurious loan of money, it is only necessary to determine whether the bill is a perfect and available bill in the hands of the seller, or whether it takes its inception as a bill and becomes the evidence of a subsisting debt upon its transfer to

the holder. This is the test by which the legality of the transaction is to be determined. If the bill is invalid in the hands of the seller, the maker can avail himself of the defense of usury in the negotiation of the bill, and the defense will be complete upon establishing the fact that it was transferred at a discount greater than that allowed by law. (*Dowe* v. *Schutt, supra.*) The rule is the same, notwithstanding the bill is transferred without authority, or tortiously, as against the maker. (*Keutgen* v. *Parks, supra.*) In this case, had Bundy been the agent in fact of the defendant to negotiate the note in suit, the transaction would have been clearly usurious. The purchaser of the note cannot complain if he is placed in the same situation that he would have been had the possession and transfer of the note by Bundy been legal. The law, for the benefit of commerce, only goes to this extent, and protects *bona fide* purchasers of negotiable paper, when transferred to them tortiously, to the same extent that they would be protected upon an authorized transfer of the note under the same circumstances. In this view of the case the note, as a note having its inception at the time of the transfer to Bigelow, and only becoming operative by that act, is usurious and void; and although the defense of usury is not alleged in the answer and cannot therefore be relied upon by itself as a defense to the action, it may be alleged in impeachment of the good faith of Bigelow, and being established, takes away all pretense of the bona fides of the transaction. Upon this ground the judgment must be reversed.

There appears to be no hardship in this case. So far as want of proper caution has contributed to place the parties in their present situation, the fault is entirely on the part of Bigelow, under whom the plaintiff claims, and in whose place he stands. This fact cannot influence the result, or affect the legal rights of the parties, but it is a relief to know that the true equities of the case are consistent with the legal rights of the parties. Aside from the ground already considered, I think it may be safely asserted upon principle as well as authority, that the note never had an inception so as to enable any person to become a bona fide holder of it. It was an imperfect instrument, wanting

delivery to give it vitality as the promissory note of the defendant. The holder has taken but a blank piece of paper, not a promissory note. (*Ande* v. *Dixon*, 6 *Exch. R.* 869.) But upon the ground more fully considered, the judgment is reversed and a new trial granted; costs to abide the event.

[ONONDAGA GENERAL TERM, October 3, 1853. *Gridley, W. F. Allen, Hubbard* and *Pratt*, Justices.]