THE CLARKE NATIONAL BANK *vs.* THE BANK OF ALBION, impleaded, &c.

The cashier of a bank, as one of its financial officers, in its daily and ordinary business transactions, has authority to certify checks drawn on the bank, by its customers, in all cases where any officer could do the same and bind the bank.

This authority is regarded as general, growing out of a cashier's position in the bank; and persons dealing with the bank are not, in any way, affected or bound by the special restrictions and limitations imposed upon him by the corporation, whose agent he is.

A cashier has no power, however, to make the certification, unless he has the funds of the drawer in hand to meet the check. This limitation on his general authority is, in the law, presumed to be known by all the bank's customers and others who act upon the statements and representations of its agent.

Neither has a cashier power, as the agent of the bank, to certify a check until on or after the day the same is made payable.

Clarke National Bank *v.* Bank of Albion.

Where a *post-dated* check is certified by the cashier of the bank on which it is drawn, to be "good," by indorsement thereon, before the day of its date, the instrument, upon its very face, communicates facts and information to persons receiving the same that the cashier, in making such certification, was not acting within the known limits of his power, and that he was clearly exceeding them.

It appearing, on the face of such paper, that it was certified by the cashier before its payment could have been legally demanded, and before it could be presumed that the drawer had made a deposit for its payment, this is, in the law, full notice to a purchaser.

To enable a holder of such check to recover of the bank, upon it, it must appear that he became the owner and holder in good faith, for a full and fair consideration, in the usual course of business, and without notice of the cashier's want of power to make the certification. He must have parted with something of value upon the strength, and in consideration, of the transfer of the paper.

If he parted with nothing before the check was dishonored, he stands in privity with his immediate indorsers, and is affected by all that will affect them.

Crediting the indorsers with the avails of the check on the books of the holder, is in no sense a paying over. The holder, upon receiving notice of dishonor, has an undoubted right to erase such credit, and to restore it only at the special instance of the indorsers from whom he received the check.

MOTION for a new trial, on a bill of exceptions, ordered to be heard, in the first instance, at general term.

From the case it appears that, some time in November, or early part of December, in the year 1865, one O. F. Burns drew his check, and post-dated it, January 10, 1866, of which the following is a copy:

"ALBION, N. Y., January 10th, 1866.
Cashier of the Bank of Albion :

Pay to self or order, six thousand dollars, and charge to the account of                    ·    O. F. BURNS."

On the back of this check there was placed a $3 United States revenue stamp, cancelled by writing on the face thereof, "O. F. B. Jan'y 10, '66," the same being in the hand writing of the drawer. Before the check was used by Burns, and while it was yet in his hands, he called into

his own office, A. J. Chester, the assistant cashier of the Bank of Albion, who wrote across the face of the check the words " *Good.* A. J. Chester, A. Cash." Chester was, at the time, acting as teller at the bank, and doing the duties of cashier. At the time of this certification, Burns had in the bank to his credit, $16.75, and no more, and owed the bank, on over due paper, to a considerable amount. The drawer's account remained the same until after the presentation of the check for payment. The bank kept no certification book, and this transaction never appeared in any form on the books of the bank, and Chester did not inform any of the officers of the bank of the transaction, until it was to them otherwise disclosed. The bank was not in the custom of certifying checks, and the president and chief financial officer directed the other officers not to certify checks, but to pay if there were funds; if not, to return them.

As early as the 1st of December, 1865, Burns indorsed the check, and passed it to Ward & Brother, bankers, at Rochester, and received the avails thereof in cash, less the discount up to January 10, 1866, and they were ignorant that the cashier's certificate was false, and that he had no funds. Ward & Brother held the check, unpresented for payment, until the 7th of March, 1866, when they transferred it to the plaintiff, who, on that day, caused it to be presented for payment, which was refused. When Ward & Brother indorsed it to the plaintiff, they were credited on the plaintiff's book, $5985, being one quarter per cent less than the face, which was agreed upon as costs of collection. A deposit ticket was handed to Ward & Brother, which is as follows:

" Deposited by Ward & Bro.

| | Dollars. | Cents. |
|---|---|---|
| Rochester, March 7, 1866. | | |
| Check, . . . . . . . . | $6,000 | |
| | 15 | |
| | 5,985 " | |

The president of the Clarke Bank received notice of protest on the 8th of March, and on the books of the bank charged back this check to Ward & Brother, with $1.27 costs of protest, which made an item of $6001.27. The president of the Clarke Bank testified that the bank was accustomed to do so. When the attention of Ward & Brother was called to the fact that the check had been charged back to them, they refused to allow it, and it was credited back again to them, but the case does not disclose when.

On the 7th of March, Ward & Brother had deposited with the plaintiff's bank, $293,000; on the 10th of March, $289,000; on the 4th of April, $246,000—on which day they failed, and since then the deposit has been drawn out.

The evidence being closed, the counsel for the plaintiff then requested the court to direct a verdict for the plaintiff, upon the ground that Ward & Brother, having purchased said check and paid full value therefor, without notice that the same was improperly certified by the cashier of the defendant, it was estopped from setting up that the same was improperly certified, to defeat the plaintiff's recovery. The court declined so to charge, and the plaintiff duly excepted. The plaintiff also requested the court to instruct the jury, that the plaintiff was entitled to recover, on the ground that it was a *bona fide* purchaser of said check, and that the defendant was estopped from setting up the fact that the same was improperly certified. The court declined so to instruct the jury, and the plaintiff duly excepted. The court thereupon ruled and decided, and, among other things, charged the jury that, under all the circumstances of this case, and from the undisputed evidence, the check was not collectable of the defendant in the hands of Ward & Brother. To this ruling the plaintiff duly excepted. The court further charged the jury that the sole question in the case was, whether the plaintiff took the check in question in good faith, and

for value, in the usual course of business, without notice of its fraudulent character; that, if they so found, the plaintiff was entitled to recover; if not, their verdict must be for the defendant. That the jury had a right to take into consideration whatever appeared upon the face of the check, and of any indorsements thereon, at the time of its receipt, as bearing upon the question of good faith of the plaintiff in its purchase of the same. That if any thing appearing at the time upon said check, was notice sufficient to put the plaintiff upon inquiry in reference to the origin thereof, and if such inquiry, properly followed up, would have led to knowledge in relation thereto, then the plaintiff was not a *bona fide* purchaser of said check, and was not entitled to recover. That if the check was taken by the plaintiff, with a view to put Ward & Brother in a position to collect the same in the plaintiff's name, but really for Ward & Brother, so that the defendant would be estopped from setting up the facts as to making the check, in its defense, then the plaintiff was not entitled to recover.

All these several propositions were duly and severally excepted to by the plaintiff. The jury rendered a verdict for the defendant.

*W. F. Cogswell*, for the plaintiff.

*John H. White* and *John L. Talcott*, for the defendant.

*By the Court*, BARKER, J. The first question to be considered and determined in this case is, whether this check was collectible as against the defendant, the Bank of Albion, in the hands of Ward & Brother? If so, then it is not impaired, as a valid and binding instrument, as against the defendant, by the transfer of the legal title thereof to the plaintiff.

The propositions of law involved in this point, and to

be considered and applied, are all discussed and adjudicated, in *Farmers and Mechanics' Bank* v. *Butchers and Drovers' Bank*, (16 *N. Y. Rep.* 125,) and *N. Y. and N. H. R. R. Co.* v. *Schuyler et al.* (34 *N. Y. Rep.* 30.)

Chester, as cashier, was one of the financial officers of the bank, in its daily and ordinary business transactions; and had ample and unquestioned authority to certify checks drawn on the bank, by its customers, in all cases, where any officer could do the same and bind the bank. This authority is regarded as general, growing out of the officer's position in the bank, and persons dealing with the bank are not in any way affected or bound by the special restrictions and limitations imposed upon him by the corporation, whose agent he is. In this case the defendant's liability is sought to be established upon this general and conceded power. There is no claim made by the defendant, or if there is, it is wholly unsupported by the evidence, that Ward & Bro. had any notice of the special restrictions given to the cashier, by the chief stockholder and president of the bank.

The cashier has no power to make the certification, unless he has the funds of the drawer in hand to meet the check. The certificate is simply answering the supposed inquiry of the holder of the check, or of one about to take it, if the maker has funds on deposit in the bank, out of which it can be paid. This limitation on the general authority of the cashier or agent of the bank, is in the law, presumed to be known by all the bank's customers and others who act upon the statements and representations of its agent.

In the case of *Farmers and Merchants' Bank* v. *The Butchers and Drovers' Bank*, (*supra*,) the following language is used: " It is conceded, that every one taking the check in question, would be presumed to know that the teller had no authority to certify without funds. But this knowledge alone does not apprise him that the certificate was

defective and unauthorized. To discover that, he must not only have notice of the limitations upon the powers of the teller, but of the extrinsic fact, that the bank had no funds; and as to this extrinsic fact, which he cannot justly be presumed to know, he may act upon the representation of the agent.

"There is a plain distinction between the terms of a power and facts entirely extraneous, upon which the right to exercise the authority conferred may depend. One who deals with an agent, has no right to confide in the representation of the agent as to the extent of his powers. If, therefore, a person knowing that the bank has no funds of the drawer, should take a certified check, upon the represenation of the cashier or other officer, by whom the certificate was made, that he was authorized to certify without funds, the bank would not be liable. But in regard to the extrinsic fact, whether the bank has funds or not, the case is different. That is a fact which a stranger, who takes a check certified by the teller cannot be supposed to have any means of knowing. * * * · * It is, I think, a sound rule, that when the party dealing with an agent, has ascertained that the act of the agent corresponds in every particular, in regard to which such party has or is presumed to have any knowledge, with the terms of the power, he may take the representations of the agent as to any extrinsic fact, *which rests peculiarly within the knowledge of the agent, and which cannot be ascertained by a comparison of the power with the act done under it.*"

In the case of *The North River Bank* v. *Aymar*, (3 *Hill*, 262,) the same proposition is maintained, and stated thus: "Whenever the very act of the agent is authorized by the terms of the power, that is, whenever, by comparing the act done by the agent, with the words of the power, the act is in itself warranted by the terms used, such an act is binding on the constituent, as to all persons dealing in good faith with the agent, such persons are not bound

to inquire into facts *aliunde;* the apparent authority is the real authority."

Whether this action could have been maintained by Ward & Bro. while they remained the owners of the check, must be determined by these plain and comprehensive propositions. In my judgment they could not. This paper instrument upon its very face, communicated facts and information to Ward & Bro. that the cashier was not acting, in making this certification, within the known limits of his power, and that he was clearly exceeding them. At the very least, there was on the face of this check enough suggested to put them upon diligent inquiry. Surely sufficient for them to ask the maker of this post-dated check, from whose hands they received it, and for whom they discounted it as time paper, as to whether he had then on deposit in the defendants' bank, money by him appropriated to pay this check, not yet to mature for thirty days. If they had used this caution, as I hold they were bound to do, they would have learned the fact that the cashier was attempting to cheat his principal, and Burns to defraud them.

From the rule laid down in the above cited cases, as well as from the character of the power of an agent, to certify checks drawn on his principal, he is not authorized to make the certification until on or after the day the check is made payable.

Checks are never presented for acceptance, but only for payment, to enable the holder immediately to demand and receive the money stated therein—and in theory are not intended to circulate as commercial paper. They are always supposed to be drawn upon a previous deposit of funds, and are an appropriation of so much of the money in the hands of the banker to the holder of the check. (*Story on Promissory Notes,* §§ 488, 489.) They must be regarded as drawn and dated the day they bear date. (*The Mohawk Bank* v. *Broderick,* 13 *Wend.* 133.) Where

a check is drawn and negotiated before it bears date, the effect is, that the same is payable on demand, on and after the day on which it purports to bear date, and nothing more. (*S. C.* 10 *Wend.* 308.) They are not due before payment is demanded, in which respect they differ from bills of exchange payable on a particular day. (*Chitty on Bills,* 7th *Am. ed.* 322. *Harker* v. *Anderson,* 21 *Wend.* 374.)

From these propositions of law, it follows that this check was certified by the cashier, before its payment could have been legally demanded, and before it could be presumed that the drawer had made a deposit for its payment; all of which appeared on the face of the paper, and was in the law, full notice to Ward & Bro. Post-dated checks are instruments often used, and their nature and character are well understood by bankers and the trading community. By all such persons it is regarded that the drawer is not in funds at the bank on which he draws his check, when he makes and delivers the same, and does not expect to be, until the arrival of the date inserted in the check. Ward & Bro. could not then have maintained an action on the check, against the bank, because, *First.* This check was certified by the cashier before it was payable by its terms, and before any legal demand of payment was or could be made. *Second.* It was certified, when the presumption is, that the drawer had no funds in the bank to meet it. *Third.* Ward & Bro. were not *bona fide* holders of this check without notice of the facts, which vitiates the certification.

The check was negotiated by Ward & Bro. to the plaintiff's bank, on the 7th day of March, 1866, some two months after the same was dated. The plaintiff's bank did not receive from the face of the paper, the same full and complete notice that Ward & Bro. did, that the cashier had exceeded his authority, and had no power to make

the certificate. To determine its right to recover, other and different propositions of law have to be considered.

To enable the plaintiff to recover upon this paper, it must appear that it became the owner and holder in good faith for a full and fair consideration, in the usual course of business, and without notice of the cashier's want of power to make the certification. (*Hall* v. *Wilson*, 16 *Barb.* 550.) This rule is elementary, and does not need to be supported by the citation of authorities, which are so full and abundant.

Applying this test, it is at once apparent that the plaintiff cannot recover; for it did not pay any thing for this paper, until after the check was returned to it by the defendant, dishonored. That the holder must have parted with something of value upon the strength and in consideration of the transfer of the paper, is well settled. A party taking negotiable securities upon a precedent debt, relinquishing nothing of value at the time, or without any consideration, is not a purchaser for a valuable consideration. (*Stalker* v. *McDonald*, 6 *Hill*, 93. *Hall* v. *Wilson*, 16 *Barb.* 550. *Bay* v. *Coddington*, 5 *John. Ch.* 54. *Ramsdell* v. *Morgan*, 16 *Wend.* 574. *Goldsmid* v. *Lewis County Bank*, 12 *Barb.* 407.) If it is proved that the plaintiff parted with nothing, before the check was dishonored, then it stands in privity with its immediate indorsers, and is affected by all that will affect them.

The credit of the avails of the check to Ward & Bro. on the books of the bank, was in no sense a paying over. The sum agreed upon as the price of the check, was not by that act parted with and placed beyond the control of the plaintiff. Ward & Bro. could not, if they had attempted, have made a transfer of the credit, so as to prevent the bank from setting up the defense, that the certification was fraudulent, and known to be so by the indorsers, when delivered to the bank. Suppose Ward & Bro. had transferred this check to a merchant, in payment of a bill

of goods, purchased at the same time, and before. the goods were delivered from the seller's actual possession, he had been fully informed of the fraudulent character of the certificate given by the cashier, could he then be regarded as a holder upon a good and fair consideration parted with? I think not. And this case in principle, is like the one supposed. The plaintiff, upon receiving notice of dishonor, had an undoubted right to erase the credit, as it did, and restored it only at the special instance of Ward & Bro. No argument can prove that the bank had, prior to notice of dishonor, *parted with value* for this check. (*Fulton Bank* v. *Phenix Bank,* 1 *Hall,* 562. 9 *Mass. Rep.* 408. 1 *Abb. Dig.* 473. *Clark* v. *Ely,* 2 *Sandf. Ch.* 166.) In *Fulton Bank* v. *Phenix Bank,* it was held, that the mere act of giving credit on the books, unaccompanied by any payment on the faith of the deposit, was not parting with value, for the bank might, on learning the facts, have errased the credit.

The court charged the jury, that if any thing appearing at the time upon said check, was notice sufficient to put the plaintiff upon inquiry in reference to the origin thereof, and if such inquiry, properly followed up, would have led to knowledge in relation thereto, then the plaintiff was not a *bona fide* purchaser of said check, and is not entitled to recover.

The plaintiff insists this is an erroneous proposition of law, and for that reason a new trial must be granted. It is unnecessary to examine the same, for the purpose of determining this case; for it is seen that the plaintiff cannot recover, for a reason entirely distinct and independent of this proposition. But I think the charge sound and correct, in the sense in which it was used, and the application of it to the case at bar. The plaintiff's counsel invokes the application of the rule of law now well settled, that one giving value for a negotiable security, and having no notice at the time, that the party from whom he takes

Clarke National Bank *v.* Bank of Albion.

it has no title, is entitled to recover upon it, although he may at the time have had the means of knowledge of the fact, of which means he neglected to avail himself, and that the right to recover by the holder is not defeated by proof of negligence, or even gross negligence, and that nothing short of *mala fides*, can defeat his action.

The mistake of the learned counsel for the plaintiff is, in seeking to apply this conventional rule of commercial law, to the case in hand. The proposition, as charged, was applied to the point in controversy on the trial, whether the plaintiff knew the cashier had exceeded his authority in making the certification. The fact appears on the face of the instrument, that the certificate was made by an agent. We have seen that all persons were bound to inquire at their own peril of the extent of his authority, and whether the nature of the act was within the scope of his power. The whole question is dependent on the doctrine that governs the law of principal and agent. (34 *N. Y. Rep.* 72.)

The learned judge did not assert that any thing did appear on the face of the paper, sufficient to put the plaintiff upon inquiry, but left it for the jury to say. The only thing that did appear, that would naturally lead to inquiry, was the amount of the revenue stamps, being $3, when the law only required two cents, and, the lapse of time since the date of the check. But as this case is disposed of on another point, not in any wise affected by or dependent on this, I shall not consider it further.

A new trial is denied with costs.

[ERIE GENERAL TERM, November 16, 1868. *Daniels, Marvin* and *Barker,* Justices.]