The Bank of Albion, Respondent, *v.* Oscar F. Burns and others, Appellants.

(General Term, Eighth District, May, 1869.)

B. was indebted to a bank, and executed to it his bond for an amount equal to part of the indebtedness, conditioned to pay at a time specified; he then joined with his wife in a mortgage of her separate real property, securing to the bank the payment of the sum named in the condition of the bond, according to the terms thereof, and delivered it, agreeing that it should remain a continuing security in the hands of the mortgagee for payment of all his liabilities then existing,—something more than double the amount secured,—and also, for all those he might afterward incur. The bank had no actual notice that B. was not owner of the mortgaged property, but the deed to B.'s wife was recorded. B. never paid his original indebtedness. He obtained extentions of the time of payment after the maturity of the liability secured by the mortgage, and became still more largely indebted to the bank, and so remained at the time of his decease. In an action by the bank to foreclose the mortgage.

The Bank of Albion *v.* Burns.

*Held*, that it was, originally, a valid collateral security for payment of the existing indebtedness covered by B.'s bond;

That it was not a continuing guaranty for future advances to B., he having no presumptive authority from his wife, to make an agreement in that respect;

That the plaintiff was charged with notice that the owner of the land, pledged it as surety for B.'s debt;

That the land was discharged from the lien of the mortgage by the indulgence given to the principal debtor.

APPEAL by the defendants, Robert Burns, Eddie Burns and Anna Burns, impleaded, &c., from a judgment entered upon the report and decision of a referee. The action was to foreclose a mortgage.

Oscar F. Burns and Anna Burns intermarried October 1st, 1850. August 8th, 1861, Oscar executed to Roswell S. Burrows, president of the Bank of Albion, a bond conditioned to pay $2,000, one half in three months, and one half in six months, interest on all sums unpaid, payable at the time of each payment. A mortgage, bearing the same date, was executed by Oscar and his wife Anna, covering the land in question, conditioned for the payment of $2,000, according to the condition of the bond. This mortgage was acknowledged August 9, 1861, and recorded the same day. Mrs. Burns was seized in fee of the land mortgaged. The referee, however, found that Burrows was not advised, and had no knowledge or information that the premises were the separate property of Mrs. Burns.

Mrs. Burns took title to the premises under a conveyance to her, dated October 5, 1860, acknowledged the same day, and duly recorded October 6, 1860.

The referee found that the bond and mortgage were executed and delivered to the plaintiff, as collateral security for the payment of any and all claims and demands which the bank then had, and thereafter might have, against Oscar F. Burns by note, draft, check or otherwise, and for all liabilities on which Burns then was, or might become, liable. The fact so found was denied by the appellants, and they complained of the finding.

Anna Burns died in March, 1862, and the infant appellants are her heirs at law. Oscar F. Burns died in July, 1866.

The referee found that at the time the bond and mortgage were executed, Burns was indebted to the plaintiff in the sum of $4,178.14, and that but little, if any, portion of this indebtedness was ever paid; but that it was extended from time to time, new notes being given therefor; and that the indebtedness gradually increased by accumulation of interest and new loans; and that at the time of Burns' death, he owed the plaintiff over $14,000. The referee directed the usual judgment of foreclosure in favor of the plaintiff, and the defendants excepted.

*Goff & White,* and *J. L. Talcott,* for the respondents.

*Church & Sawyer,* for the appellants.

Present—MARVIN, LAMONT and BARKER, JJ.

By the Court—MARVIN, P. J. The evidence to sustain the finding that the bond and mortgage were executed as collateral security and a continuing guaranty for the indebtedness of Oscar F. Burns, is the testimony of Roswell S. Burrows, the president of the bank. He says they were given for such purpose, and he produced an instrument, in the form of a certificate, executed by him as president, and given to Oscar F. Burns, stating the case, substantially, as found by the referee.

The entire transaction, touching the delivery of the bond and mortgage, and upon what terms, was between Burrows and Burns. Burrows never had any communication with Mrs. Burns. He paid nothing at the time the bond and mortgage were delivered. He had no actual knowledge that the premises mortgaged were the sole property of Mrs. Burns.

The counsel for the defendants make the point that the mortgage was never a valid security in the hands of the

The Bank of Albion v. Burns.

plaintiff, and cite a class of cases showing that a note, to be the subject of sale, must be an existing, valid note in the hands of the payee, and that when the note has no legal inception, vitality cannot be given to it by a transfer upon an illegal consideration. (*Hall* v. *Wilson*, 16 Barb., 548; *Hall* v. *Ernest*, 36 Barb., 585; *Dowe* v. *Schutt*, 2 Den., 621.) The counsel says the security was not valid in the hands of Burns. The pertinency of this point, and the cases cited, are not perceived, unless it was intended, as I infer from subsequent points, to take the position that the bank could not take the mortgage upon any terms other than an advance of money, at the time, for the full amount. And this raises the question whether Burns could deliver the bond and mortgage to the bank, and the bank could receive them in payment of Burns' existing indebtedness, or as a collateral security for such indebtedness, and in this way bind Mrs. Burns.

Cases are cited to show that an express power to sell confers no power to pledge, and that an agent cannot pledge the note of his principal as security for past and future advances to the agent. It seems to me that these cases are not applicable to the present case. In this case, by the bond, Burns acknowledged a debt of $4,000 to the plaintiff, and the condition was to pay $2,000, and interest, at the times mentioned, and the mortgage was conditioned for the payment of $2,000, according to the condition of the bond. We are to assume that Mrs. Burns understood the terms of the bond, and that the debt then existing, or to be created, was the debt of her husband, and that she pledged her lands as security for his debt. There can be no presumption that he gave his bond to raise money for her. There is nothing in the case to show that, to her, there was any significance in the question whether the bond and mortgage were used in payment of a debt then existing, or one to be created at the time of delivery.

Whether Burns had authority to deliver the mortgage as collateral security for existing debts, and as a continuing security for future indebtedness, is a very different question; and if he had not this authority then, perhaps, the point first

made by the learned counsel may be good; that is, that the mortgage was never a valid security in the hands of the plaintiff. In my opinion, the delivery of the mortgage was valid as to $2,000 indebtedness then existing; though by the agreement between Burrows and Burns it was to be a security for future liabilities also. As to future liabilities, was the delivery valid, and binding upon the estate of Mrs. Burns? We are to keep in mind that there is no evidence in the case, touching the authority of Burns, to affect the property rights of Mrs. Burns, other than the papers,—bond and mortgage—in the hands of Burns. As Burrows, president, &c., was named as obligee in the bond, and mortgagee in the mortgage, and as Mrs. Burns intrusted the mortgage to Burns, who had, by the bond, acknowledged himself indebted to Burrows, president, &c., I have no doubt the authority to deliver the mort- gage with the bond should be inferred. But where is the evidence of any authority in Burns to agree with Burrows that the mortgage should be held as a collateral security for debts contracted by Burns at any future period; that it should stand as a continuing guaranty for successive debts indefinitely? No such authority can be fairly inferred from the written instruments. By them, the amount of the debt is not only fixed, but the manner and time of payment are fixed; one-half in three, and one-half in six months. It was for the performance of this clearly expressed obligation that Mrs. Burns pledged her lands as surety. A surety may be quite willing to guarantee the payment of a certain debt, to become due within a short, fixed time, and yet be unwilling to assume the liability, if the time of payment is fixed for a later period, or is left indefinite.

The counsel for the plaintiff refers to cases to show that mortgages and judgments, in which the amount to be paid, and the time when, are specified, may be given to secure future advances; and that this may be so, though it should not, in terms, be so specified in the mortgage or judgment. This is undoubtedly so; but unless the agreement is expressed in the written instrument, that it shall stand as a continu

ing guaranty, such agreement must be made by the parties to be bound, or their agents, duly authorized. No case, I apprehend, can be found where the obligation expresses simply the amount to be paid, and the time of payment, in which it has been held, in the absence of an agreement of the parties, that the instrument or obligation may be retained as a continuing guaranty for future liabilities. The cases cited by counsel are *Kendrick* v. *Robinson* (2 J. Ch. R., 309); *Brinckerhoff* v. *Marvin* (5 id., 326); *James* v. *Johnson* (6 id., 420); *Truscott* v. *King* (6 N. Y. R., 147, 157); *Livingston* v. *McKinley* (16 J. R., 165); *Shirros* v. *Caig* (7 Cranch., 34); *The Bank of Utica* v. *Finch* (3 Barb. Ch. R., 293); *Robinson* v. *Williams* (22 N. Y. R., 380); *Young* v. *Wilson* (27 N. Y., 351). In all these cases, the agreement was specified in the instrument, or outside of it, by the parties to be bound. Numerous other cases exist, but it is not necessary to refer to them here. The law is well stated by JEWETT, J., in *Truscott* v. *King, supra,* where the cases are very largely examined. He says: "The principle is well established that a mortgage or judgment may be taken and held as a security for future advances and responsibilities to the extent of it, when that forms a part of the original agreement between the parties."

In the case we are considering, Burns had no authority to use the mortgage as a security for future advances; and Mrs. Burns was not bound by such arrangement. *Smith* v. *Townsend* (25 N. Y. R., 479) is instructive upon this question. Townsend and wife executed a mortgage upon lands, some of which were her separate property, to the bank, as security for the payment of the indebtedness of Townsend, or the "Buffalo Car Company," then incurred, or thereafter to be incurred. A large debt accrued against the car company, and the bank, after the car company was insolvent, agreed to extend its payment upon certain conditions. Townsend agreed to the extension, but Mrs. Townsend did not; and the court held that her separate land, mortgaged, was discharged; and the Court of Appeals affirmed the judgment.

The husband had no authority to consent to the extension,

for his wife and her lands, pledged as security, were dis-charged; so, in this case, Burns having no authority to pledge the mortgage as security for future liabilities, the mortgaged premises are not liable for such debts.

The point is made that Burrows had no knowledge that Mrs. Burns owned the land mortgaged; that he did not, therefore, know that the land was a security, furnished by a third person, for the debt of Burns; and the referee has found that Burrows had no knowledge or information that she was the owner. I really do not see how this fact can affect Mrs. Burns' rights touching the use that was made of the mortgage.

I hold that the mortgage was valid in the hands of the bank, precisely according to the terms of the bond. In *Smith* v. *Townsend*, there was nothing, at the time the mortgage was executed, to indicate in whom the title of the land was; and GOULD, J., said they were thrown back upon the legal presumption that the taker of a convey-ance is held to take it according to the true title of the grantor, and with the knowledge of it. WRIGHT, J., said: It must be presumed that a mortgagee is cognizant of the title to the estate mortgaged, where there is no countervail-ing testimony. In the present case, the conveyance to Mrs. Burns was duly recorded, prior to the execution of the mort-gage to Burrows, and this was notice of her title. The plaintiff is to be regarded as having notice that the land, described in the mortgage, was simply surety for the debt of Burns; and this brings us to the question, whether such surety has been discharged.

The referee has found that Burns was indebted to the bank $4,178.14 at the time the mortgage was executed, and that but little, if any portion of the debt, was ever paid, but that the same was extended from time to time, new notes being given therefor; that Burns' indebtedness gradually increased to over $14,000 at the time of his death (July, 1866). As I have come to the conclusion that the mortgage could not be held as a continuing security for the payment of future debts,

The Bank of Albion v. Burns.

thus differing with the referee, how will the facts just stated affect the case? The referee does not find that the notes and evidences of debt, existing at the time the mortgage was given, had not been delivered up to Burns upon the payment of cash or the making of new notes. The evidence shows that the account between the bank and Burns was continued in the usual way. Burns, from time to time, paid moneys into the bank, and made and delivered new notes, either upon new loans or in renewal of the debts he owed. No separate account of any $2,000 indebtedness was ever kept, nor were the bond and mortgage ever applied to any specific indebtedness of $2,000. As Burrows understood the matter, this was not necessary; but as we understand it now, the debt for which the land was pledged as security was a debt to be paid in three and six months, and the creditor had no right, as against the surety, to extend the time of payment and put it out of its power to enforce payment. The surety has always the right to pay the debt when it becomes due, and resort at once to the principal debtor for indemnity. This general dealing between the bank and Burns was continued from the execution of the mortgage (August, 1861), to the death of Burns, in July, 1866, several years after the death of Mrs. Burns. Burrows, understanding the mortgage to be a continuing guaranty, took, in April, 1865, Burns' note for $2,000, without an indorser.

Some other questions are presented by the case and by counsel, but, in my view, it is not necessary to remark upon them. It may, however, be well to say, that Burns delivered to Burrows another mortgage, of the same date, for $3,000, executed by himself and wife upon premises belonging to Burns, and for the purpose of securing his debt. In July, 1864, Burrows discharged this mortgage at the request of Burns. If the $2,000 mortgage upon Mrs. Burns' lands had been a continuing guaranty, she or her heirs would have been entitled to the benefit of this $3,000 mortgage. As Burns was the owner of this land covered by this mortgage, he had a right to deliver it as security for future advances.

. The authorities cited by the counsel for the plaintiff in support of the position that extensions of the time for the payment of the debt will not release the security, are not applicable to this case. The securities, in those cases, were not furnished by persons other than the debtor. That the extension of the time, by a valid agreement, will discharge the surety is shown by *Smith* v. *Townsend, supra.* It cannot be necessary to cite authorities to show that where the creditor takes a new note for the old debt, giving time, and thus putting it out of his power to sue upon the old debt until the time given by the new note has expired, it will discharge any surety for the payment of the old debt.

The judgment must be reversed, and there must be a new trial; costs reserved to the final hearing.

Judgment reversed.