## Case No. 2,224.

### BUSH v. CRAWFORD.

[7 N. B. R. 299;[1] 29 Leg. Int. 365; 9 Phila. 392; 20 Pittsb. Leg. J. 65.]

Circuit Court, E. D. Pennsylvania. Nov. 8, 1872.

RIGHTS OF HOLDER OF PROMISSORY NOTE—OF INDORSER.

1. Notes drawn by one partner in the firm-name, apparently in the course of partnership business, without mala fide or actual knowledge by the holder of want of authority or intended misapplication, entitle the holder to their allowance against the bankrupt estate of the firm.

[See Babcock v. Stone, Case No. 701. Compare Dowling v. Exchange Bank, 145 U. S. 512, 12 Sup. Ct. 928.]

2. A., a member of a partnership, offered B. for indorsement his individual notes, representing, however, that they were to be used for purposes of the firm. B. refusing to indorse the same, A., at B.'s suggestion, substituted the firm notes, which B. indorsed, and subsequently paid and became their holder. *Held*, that although it appeared that the notes, after said indorsement, were used by A. to pay his separate indebtedness, and in fraud of his co-partners, B. might recover against the firm, there being no evidence of bad faith or actual knowledge by him of the intended fraud.

Appeal from an order of the district court disallowing proof of the appellant's claims.

[In bankruptcy. Proof of debt by Van Camp Bush against the bankrupt estate of Dunkle & Dreisbach. The register reported in favor of the validity of the claim, but the assignee, Josiah Crawford, excepted to the report, and his exception was sustained

[1] [Reprinted from 7 N. B. R. 299, by permission.]

by the district court. In re Dunkle, Case No. 4,161. The creditor appealed to the circuit court, and the order of the district court was reversed, the exceptions to the report of the register disallowed, and his report confirmed.]

C. E. Morgan, Jr., and Clement B. Penrose, for appellant.

George Junkin, for appellee.

McKENNAN, Circuit Judge. The appellant is the holder of negotiable paper, purporting to be made and issued by the bankrupt firm of Dunkle & Dreisbach. He made the necessary proof of his claims before the register in bankruptcy, but the district court rejected them, in part, because he was not a bona fide holder, without notice of facts affecting their validity. Dunkle & Dreisbach were partners in business in Philadelphia, succeeding McCurdy & Dunkle, both of which firms were customers of the firm of which the appellant was a member. In August, 1868, Dunkle informed the appellant of the contemplated change in his firm by the retirement of McCurdy and the accession of Dreisbach, "and that he might want a favor" of him. In December following, he again called upon the appellant, and asked his indorsement for two notes for $3,000 each, drawn by himself individually. Upon inquiry by the appellant, he was informed that the notes were for McCurdy, for the balance of the stock; that the new firm of Dunkle & Dreisbach had purchased the goods, and were to pay for them; that the notes were for this purpose, and as the reason why they were drawn in Dunkle's own name, that he did not know it would make any difference in the security of the indorser. Upon further inquiry, and a detailed explanation of the condition of the firm of Dunkle & Dreisbach, the appellant was satisfied of its entire solvency. Thereupon, and in pursuance of the appellant's suggestion, new notes were drawn in the name of the firm, which he indorsed and was subsequently required to take up. Instead of using these notes in the partnership business, Dunkle applied them to the payment of his individual indebtedness. It is undoubted that, as between the partners themselves, this use of the firm credit by Dunkle was unauthorized and fraudulent; but the question is, has such a relation to the transaction, on the part of the appellant, been shown, as will make him a holder, mala fide, of these firm notes.

Each member of a partnership is the agent of the firm, and is competent to bind it in any transaction within the general scope of the partnership business. "The act of each partner," says Chancellor Kent (3 Comm. 40, 41), "in transactions relating to the partnership, is considered the act of all, and binds all. He can buy and sell partnership effects, and make contracts in reference to the business of the firm, and pay and receive, and

draw and indorse, and accept bills and notes. * * * The act of one partner, though on his private account, and contrary to the private arrangement among themselves, will bind all the parties, if made without knowledge of the arrangement, and in a matter which, according to the usual course of dealing, has reference to business transactions by the firm." The notes in question were executed by one of the partners in the name of the firm, and if they had reference to the business transacted by the firm, they were valid evidences of its indebtedness, binding upon it in the hands of a bona fide holder. It is urged that the appellant is not a bona fide holder, for the alleged reason that his conversation with Dunkle, and the form in which the notes were first presented to him, apprised him that they concerned the capital of one partner, and were inconsistent with the business of the firm. The only knowledge of the transaction the appellant had was derived from the representations of Dunkle, and these were distinctly to the effect that the notes were for McCurdy, for the balance of the stock, which the firm had purchased, and that the firm was to pay them. Now this does not import an intimation that Dunkle desired the accommodation for his individual benefit, or to provide his share of the partnership capital; but if it was true, the transaction was strictly pertinent to the partnership business, and either partner might execute negotiable paper of the firm to fulfill the partnership obligation. The only reason the appellant had to doubt the truth of the representation, was the fact that Dunkle, in the first instance, asked his indorsement of his individual notes. This fact, taken by itself, would undoubtedly stamp the transaction as one in which Dunkle alone was concerned; but, followed by the explanations which he gave, it cannot be considered as indicative of an intended appropriation of the notes for his exclusive benefit. The most that can be said of it is, that it was admonitory to greater caution and further inquiry. But this is not enough, even if it evinces gross negligence. There must be knowledge of facts impeaching the validity of the notes. The fault of Dunkle's meditated fraud must be implanted in the appellant's title, so that his assertion of a claim against the firm would necessarily subject him to the imputation of bad faith. This is now the prevalent rule in England, as it is also in many of the courts of the United States, and in the supreme court of the United States. It was first applied by Lord Mansfield in Miller v. Race, 1 Burrows, 452; and although it was subsequently departed from in Gill v. Cubitt, 3 Barn. & C. and other cases, yet they have all been overruled, and the principle announced by Lord Mansfield is now the undisputed law of England: Crook v. Jadis, 5 Barn. & Adol. 909; Backhouse v. Harrison, Id. 1098; Goodman v. Harvey, 4 Adol. & E. 870. It has been adopted in Connecticut, in Brush v. Scribner, 11 Conn. 388; in Massachusetts, Worcester Co. Bank v. Dorchester & Milton Bank, 10 Cush. 488; in New York, Hall v. Wilson, 16 Barb. 548; and in Pennsylvania, Phelan v. Moss, 17 P. F. Smith [67 Pa. St.] 62, in which the leading English and American cases are collected by Mr. Justice Read, and the rule is shown to rest upon a firm foundation of authority and commercial necessity. And it has received the definitive approval of the supreme court in Goodman v. Simonds, 20 How. [61 U. S.] 343.

The notes here having been drawn by one partner, in the firm-name, apparently in the course of partnership dealing, and without notice of facts from which the appellant was bound to infer that they were made without authority, or that a misapplication of them was contemplated, he is a bona fide holder of them, and is entitled to their allowance as debts against the bankrupt partnership.

The order of the district court is therefore reversed, the exceptions to the register's report are disallowed, and the report is confirmed.