RAMSDELL and BROWN *vs.* MORGAN.

Where goods *fraudulently* obtained are deposited with an auctioneer who makes an advance upon them, and charges five per cent. besides the usual commissions, the transaction is *usurious*, and for that cause the auctioneer is not entitled to be considered as a *bona fide purchaser*, in an action of *trover* brought against him by the party from whom the goods were obtained, although he is wholly innocent of the fraud.

THIS was an action of *trover*, tried at the New-York circuit in September, 1834, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The suit was brought for a quantity of merchandize obtained *fraudulently* from the plaintiffs, in the city of New-York, by one Michael Cannavan, and deposited by him, together with other merchandize also fraudulently obtained from other merchants in New-York, with the defendant, an auctioneer, in the city of Albany, who made advances upon the goods. The whole amount of goods deposited with the defendant between the sixth and twenty-seventh days of July, 1833, was about three thousand dollars, upon which the defendant advanced upwards of two thousand dollars, upon the principal portion of which he charged Cannavan five per cent. besides the usual commissions. The value of the goods obtained by Cannavan from the plaintiffs, and deposited with the defendant, was about one thousand two hundred dollars. The defendant sold of the goods deposited only to the amount of his advances. The judge charged the jury that if they should find that Cannavan obtained the goods from the plaintiffs with the intent to defraud, a title to the goods did not pass to him ; but yet if the defendant was not privy to the fraud, and there were no circumstances to put him on inquiry, and he had made the advances to Cannavan as had been proved, he was entitled to their verdict. He further instructed them that though the transaction between the defendant and Cannavan should be held to be *usurious*, the plaintiffs could not avail themselves of such usury to defeat the defence. The counsel for the plaintiffs

excepted to this charge. The jury found for the *defendant*. The plaintiffs move for a new trial.

*M. T. Reynolds,* for the plaintiffs.

*S. Stevens,* for the defendant, insisted that though the goods were fraudulently obtained by Cannavan, the defendant must be considered in the light of a *bona fide* purchaser, he having, on the strength of the goods, parted with his money, and thus paid a present consideration for them. He also insisted that there was no *usury* in the transaction. There was no loan; it was a mere advance upon the goods in the ordinary course of business of auctioneers. The charges were the customary charges in that business, and unless intended as a cover for *usury,* the transaction cannot be deemed usurious. But if there was usury, the plaintiffs cannot avail themselves of it. No one but Cannavan has a right to allege that usury existed in the transaction. If, however, a third person can allege the usury, he stands in no better condition than that in which Cannavan would have stood, had he alleged the usury. Cannavan could not have maintained an action of *trover* without paying or restoring the amount actually advanced to him, *Fitzroy* v. *Gwillim,* 1 T. R. 153. He might have recovered the excess paid, on restoring the advances, but not otherwise *Wheaton* v. *Hibbard,* 20 Johns. R. 293.

*By the Court,* COWEN, J. There must be a new trial. There is a solecism on the face of the expression, "a *bona fide* purchaser *on usury.*" Where the sale of goods appears to the jury to be above all suspicion, we have protected it, natwithstanding the fraud of the vendor in obtaining them, if the fraud come short of a felony. In this we have gone beyond the English cases, which are cautiously restrained to the transfer of negotiable paper, as founded on the paramount interests of commerce. We have also gone beyond them in protecting a holder under a usurious indorsement, so far as to enable him to maintain an action, if there be no other defence against the note. The king's bench cut off

all chance of this kind to evade the statute. *Chapman v. Black*, 2 Barn. & Ald. 588, and the cases there cited. *Lloyd v. Keach*, 2 Conn. R. 175, S. P. We have not yet gone so far, however, as to say that the immediate usurious purchaser is to be protected as a holder in good faith, as coming to the possession in the fair course of trade, and thus save him from all defence as between the original holders. We have, I think, gone far enough in both respects. One who took money on a contract prohibited by statute, was held liable to the true owner, in *Clark v. Shee*, Cowp. 197, on the very ground taken here, that such an act cannot be called *bona fide*. Id. 200, 201.

If an usurious pledgee be not such a taker as comes within the rule protecting *bona fide* purchasers from fraudulent vendees, then this defence may be disregarded, without interfering with the case of *Fitzroy v. Gwillim*, 1 T. R. 153, which would certainly be a case in point against this action were it brought by Cannavan. He being owner of the goods, could not maintain trover on the ground that the deposit was on an usurious consideration, until he had refunded the money borrowed, with lawful interest, and this on the ground, as Lord Mansfield said, that trover is an equitable action. Another reason which his lordship gave at the circuit was, that the parties were in *pari delicto*, and therefore came within the rule, *potior est conditio possidentis*. But if that case has any application, if the rights of the plaintiff here are no greater than Cannavan's it has long since ceased to be of any authority. The principle upon which his lordship acted at *nisi prius*, was taken up inadvertently, and contrary to what he said in *Clarke v. Shee*, Cowp. 197, had been held a thousand times. In that case, which was about 12 years before, he had taken great pains to prove that the maxim *potior*, &c., did not apply as between the grinding usurer and the necessitous borrower. So strong was he in the ground taken, that he disregarded *Tomkins v. Burnett*, 1 Salk. 22, a case directly against him. Then as to trover being an equitable action. By this, his lordship meant, that it was so far in the nature of a bill in

equity, that the court sitting upon that action, must take the ground of chancery, and refuse all relief, until the plaintiff paid or tendered what was equitably due. The consequence was, that the defendant was protected in a most iniquitous and oppressive case of usury. Again; the principle of that case, so far as it was supposed to reside in the equitable nature of the action, has been lately overruled by *Tregoning* v. *Attenborough*, in the C. B. 4 Moore & Payne, 722, M. T. 1830, 7 Bing. 97, S. C. That, like *Fitzroy* v. *Gwillim*, was trover by the depositor, on usury, against the depositee. The court denied that the action stood on equitable grounds. They declared it strictly a legal action; and in terms exploded *Fitzroy* v. *Gwillim*. Lord Tenterden, the C. J. of the K. B. had before held the same at N. P. in *Corvie* v. *Harris*, 1 Mood. & Malk. 141, or rather, he proceeded in silent disregard of *Fitzroy* v. *Gwillim*. When *Tregoning* v. *Attenborough* came to be decided, Lord C. J. Tindal said, " The case of *Fitzroy* v. *Gwillim* has been cited, as having held that a party cannot entitle himself to relief from an usurious contract by a civil remedy, (as by maintaining an action of trover,) unless he tender all the money really advanced. It seems to me that that case can hardly be supported: according to the concurrent testimony of Westminster Hall, it was hastily decided." His lordship then cited the statute, 12 Anne, St. 2, c. 16, at length, which declares, as does our own, all usurious contracts void ; and adds, " The goods, therefore, were delivered upon a contract void in law." Park, J. stated the case of *Corvie* v. *Harris*, as in point. Gazelee, J. said, " The case of *Fitzroy* v. *Gwillim* has always struck me as being a very extraordinary decision." Bosanquet, J. said, " In trover, the strict legal right of the property is in question. I think there can be no doubt that the transaction was usurious and void." Before this, and in the course of the argument, the chief justice said, " The case of *Fitzroy* v. *Gwillim* has been looked at with doubt, very many times, and, I think, actually overruled. Trover is a strict *legal* action." And Gazelee, J. distinguished the remedy by trover a legal action, from *Hindle* v. *O'Brien*, 1 Taunt. 413, which was an ap-

ALBANY,
Jan. 1837.

Ramsdell
v.
Morgan.

plication to the equitable power of the court. I have so far read from the report of Moore & Payne. Mr. Bingham's report of the case is substantially the same. The only difference worth notice is, that he makes Lord Tenterden say, in the course of the discussion, that *Fitzroy* v. *Gwillim* was an action for money had and received, which Lord Mansfield termed an equitable action. However loosely it may have been spoken of, and however misapprehended at the argument, it was, in the end, deliberately overruled, according to both reporters.

The still later case of *Hargreaves* v. *Hutchinson*, 2 Adolph. & Ellis, 12, proceeded in equal, though silent disregard of *Fitzroy* v. *Gwillim*. See also *Roberts* v. *Goff*, 4 Barn. & Adolph. 92.

Our own statute of usury, 1 R. S. 760, § 5, 2d ed. is distinguishable from that of Anne, only in being more particular to avoid this very contract between *Cannavan & Morgan*. It is not only that all usurious contracts shall be void, which would alone be enough, according to the case cited, but it adds that " all deposites of goods, or other things, whatsoever, upon a usurious consideration, shall be void."

There is another distinction which might become material as to the remedy, provided the action of trover, or this defence, were to be deemed equitable remedies, and as such, to be governed by chancery rules. It is now not necessary, even in the latter court, to refund or tender the principal in a case like this, unless a discovery on oath be sought from the usurer. 1 R. S. 761, § 8, 2d ed. *Livingston* v. *Harris*, 3 Paige, 528 ; 11 Wendell, 329, S. C. on appeal.

In any view there must, therefore, be a new trial ; the costs to abide the event.