GEORGE M. GRIGGS, *et al.*, Respondent,

*v.*

OTIS B. HOWE, *et al.*, Appellants.

It seems that a *bona fide* holder of commercial paper, void for usury, may recover upon it, unless the usury is pleaded. *Per* PECKHAM, J.

Commercial paper accepted in blank, to be filled up by the payee with a certain amount, is good in the hands of a *bona fide* holder, though the blank has been filled with an amount larger than authorized by the acceptor.

To constitute a party a *bona fide* holder, it is only necessary that he should have taken the paper for value advanced in the ordinary course of business.

*Appeal from Supreme Court.*

THIS is an appeal by the defendants from a judgment of the Supreme Court rendered in favor of the plaintiffs in the second district.

The action was brought upon two drafts drawn by Henry L. Webb to his own order, and purporting to be accepted by the defendants, under the firm name of O. B. Howe & Co., each dated June 9th, 1855, for one thousand two hundred and fifty dollars ($1,250), one at two months and the other at three.

The defense was, that the drafts had been accepted in blank for the accommodation of Webb, the drawer, and

filled up by him for a greater amount than authorized, and that they were negotiated to the plaintiffs at a usurious rate of interest.

The cause was tried before Mr. Justice LOTT and a jury, at the Kings Circuit, in May, 1858, and on the trial the following facts appeared, to wit:

A few days prior to the date of the drafts, they were drawn at Elmira, without date or amount, and accepted by Otis B. Howe, in blank, in the name of O. B. Howe & Co., for the accommodation of Webb, on an agreement that they were not to be filled up for an amount exceeding one thousand dollars ($1,000). The drafts were afterward filled up by Webb for a greater amount than he was authorized to do, without the knowledge of defendants, and by him negotiated to the plaintiffs.

It appeared that Webb negotiated the bills to the plaintiffs at the rate of 1-8 of one per cent a day, which is at a rate something over 45 per cent a year. The answer alleged that plaintiffs deducted one hundred and twenty-five dollars ($125) from the two drafts, which was at the rate of 2 per cent per month, or 24 per cent per year for the time the paper had to run.

It appeared also on the trial, that after the maturity of the drafts Webb turned out to the plaintiffs a note of two thousand dollars ($2,000) as collateral security for their payment. Upon this note a judgment was obtained by the plaintiffs on the ninth of April, 1856, for two thousand twenty-three dollars twenty-five cents ($2,023.25), and upon a sale of property upon an execution upon the judgment on the seventh of May, 1856, they realized and had paid to their attorney by the sheriff, one thousand five hundred ninety-eight dollars seventy-six cents ($1,598.76).

The total proceeds of the sale realized by the sheriff was one thousand nine hundred twenty dollars seventy-four cents ($1,920.74). From this the sheriff deducted, for auctioneer's fees, one hundred ninety-eight dollars seventy-nine cents ($198.79); for rent, one hundred eight-

een dollars fifty-seven cents ($118.57); and sheriff's bill, ninety-four dollars sixty-four cents ($94.64); making a total of three hundred twenty-one dollars ninety-eight cents ($321.98); and their attorney retained one hundred dollars ($100), which was deducted from the amount of the proceeds of the sale, and the balance of one thousand four hundred ninety-eight dollars seventy-nine cents ($1,498.79) was paid over to the plaintiffs.

The record then states that, at the close of the evidence, the defendants asked permission to amend their answers to conform to the facts in reference to the usury taken by the plaintiffs.

The plaintiffs' counsel then stated to the court that they were taken by surprise by the proposed amendments, and were prepared to meet only the allegations of usury set up in the answer; that an important witness, Lathrop, by whom they could disprove the allegation of usury as proposed to be amended, was absent, and asked the court that if it ordered the answer to be amended it should be upon the terms of the cause going over the term and the defendants paying the costs, intermediate the answer and trial, and the court granted the motion on those terms, which the defendants declined to accept.

Thereupon the defendants requested the court to charge the jury, that the answer was broad enough to admit the proof of usury, and, if the jury find that more than seven per cent was taken, they should find for the defendants. The judge refused, and the defendants excepted.

The judge was also requested to charge that if the defendants were liable on the drafts, they should be credited with the amount collected on the two thousand ($2,000) dollar note, less the legal poundage of the sheriff, and this was refused.

The judge thereupon charged the jury that if the defendants failed to prove the agreement of usury as set forth in the answer, they failed in the defense on that point, and that proving a rate of interest beyond seven

per cent is not substantially proof of the agreement set
forth in the answer.   To this the defendants excepted.

The judge further charged, that if the drafts in question
were filled up by Webb for amounts beyond the authority
given by the acceptors, they were not for that reason void
as against the plaintiffs, if they were *bona fide* holders.
To which there was an exception.

The jury found for the plaintiffs, and the judgment
thereon having been affirmed, see 31 Barb., 100, the
defendants appeal.

*J. H. Reynolds*, for appellants.

*L. Tremain*, for respondents.

PECKHAM, J.   The only questions presented in this case
arise upon the charge, and the refusal to charge, of the
judge.   His refusal to charge that the answer was broad
enough to admit the defense of usury I think was right.
The answers set up that the interest deducted by the
plaintiffs, by agreement on discounting the two drafts, was
one hundred and twenty-five dollars ($125), which
was at the rate of two per cent a month, or 24 per cent a
year for the time the draft had run.   The proof showed
that the drafts were discounted at different times, and by
separate several contracts, and at a rate of interest of
about one-eighth of one per cent a day.   The amount
received by the drawers on the discount of both or either
of the drafts the witness could not state, as he did not
recollect the date of either discount.

There was certainly some variance.   Two several con-
tracts, set up as one, a large difference in the amount of
interest reserved, between the proof and the answer.

The defendants' counsel seemed at first of the opinion
that the variance was material, as they asked "permission
to amend the answers to conform to the facts," in refer-
ence to the amount of usury taken.

The court granted the motion upon terms which the

counsel declined to accept, and then insisted that the answers were sufficient without amendment.

Prior to the Code this variance would have been fatal to the defense of usury in any court. *Cathin* v. *Gunter*, 1 Kern., 373 ; *New Or. G. L. and B. Co.* v. *Dudley*, 8 Paige, 457 ; *Morse* v. *Clayes*, 11 Barb., 100 ; *Clayes* v. *Thayer*, 3 Hill, 565.

The Code provides a new rule as to the question of variance; it declares that "no variance between the allegation in a pleading and the proof shall be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." Code, § 169.

The plaintiffs in this case claimed to have been actually misled to their prejudice. It was not insisted by the defendants that any proof thereof should have been given to the court, as required by the Code, but without objection it was apparently assumed that the statement was true, and on that assumption the amendment was granted upon terms, and no objection or exception was made or taken by the defendants. It is too late to object now either to the absence of proof of being misled or to the decision of the court as to the terms upon which the amendment was allowed.

In the absence of any objection to the want of proof of being misled, it must be assumed that the parties assented to the truth of the statement, and to the propriety of a decision being made without such proof. The defendants had the legal right to demand the proof as the Code provides, or they might waive the strict proof and accept a statement of counsel in lieu of proof, nor was any objection or exception taken to the decision of the court on the application to answer. Of course that decision cannot be reviewed.

It was then legally decided that this was a material variance under the Code. Proof to establish the defense of usury was, therefore, inadmissible under this answer.

The defendants insist here that these drafts having been filled up by the drawer for sums larger than he was authorized to do by the acceptors, are void as against any but *bona fide* holders, and that the plaintiffs are not *bona fide* holders. No such point was taken at the trial.

On the contrary, the defendants insisted there, in various forms, that the drafts, under the circumstances, were forgeries, and were absolutely void. To the charge of the court that they were not void, but valid in plaintiffs' hands, if the plaintiffs were *bona fide* holders, the defendants excepted, though their counsel here properly concedes that the proposition was legally sound.

The court, so far as the case shows, did not direct a verdict. It must be presumed, in the absence of any evidence to the contrary, that the court decided properly and charged legally. Indeed, if the charge or decision were otherwise, and no exception taken, this court could not review it or reverse for any such cause. This court can only review such decisions of a trial court as are excepted to.

It is insisted here that the plaintiffs are not *bona fide* holders; whether they were or not, under the evidence, is an interesting question.

The question of usury, as such, with all its penalties, is out of the case.

It seems to me quite clear that a party may be a *bona fide* holder of commercial paper void for usury, and he may recover upon it, provided the usury is not pleaded.

If a note, usurious in its inception, in the hands of A., the payee who had exacted and received usurious interest on its discount, were then before its maturity passed to B. for full value advanced in the ordinary course of business, I think B. would be a *bona fide* holder, and would recover unless usury were pleaded.

Banks are in the daily habit of discounting notes for their customers without a word of inquiry as to the origin or consideration of the note; occasionally they may take a

note void for usury, or by the statute against betting and gaming, still I think it cannot be denied that they are *bona fide* holders. Yet even such holders cannot recover upon paper void for usury, or as given for a gaming debt, if such defense be pleaded. If not pleaded as in the case at bar, but some other defense relied upon, the *bona fide* character of the holder would exclude that defense, unless it made the paper void.

If the holder himself had intentionally taken usury, I agree that he could not be deemed a holder in good faith. Such are the cases of *Ramsdell* v. *Morgan*, 16 Wend., 574; *Dean* v. *Howell*, H. & Den. Sup., 39; *Keatger* v. *Parks*, 2 Sandf., 60.

But suppose the holder did not give the full amount of the draft in purchasing, does it necessarily follow that he cannot be a *bona fide* holder?

Had these drafts been accepted for value, of course they could have been legally sold at any price. Had the drawer so represented them by authority of the acceptors, they could have been sold as any other chattel and the parties estopped from setting up usury. *Holmes* v. *Williams*, 10 Paige, 336.

Suppose the holder purchased the drafts at a usurious rate of interest in the honest conviction that they were business paper, but without any such representations by the drawer, would he then be a *bona fide* holder? There are authorities in the affirmative. *Gould* v. *Seger*, 5 Duer, 270; *Mechanics' Bank of Williamsburgh* v. *Foote*, 44 Barb., 87.

Such may have been the purchase in this case. The facts disclosed on the trial leave it uncertain. The only proof by the defendants simply showed that the drawer "negotiated these drafts to the plaintiffs" and the amount he received for them. The plaintiffs offered to prove "statements made to plaintiffs by the drawer at the time of the transfer," which the court rejected on the defendants' objection; although it is quite clear that the

transaction between the parties was usurious, and the drafts would have been void for that cause had that defense been pleaded.

Possession of these drafts by the drawers was *prima facie* evidence of ownership for a good consideration. *James* v. *Chalmers*, 2 Seld., 209.

Had the plaintiffs a right to rely upon this or upon any other evidence of a like tendency, and purchase the drafts at their fair market value, subject only to the peril of usury if they were not business drafts and usury were pleaded?

To constitute a party a *bona fide* holder, it is now only necessary that he should have taken the paper for value advanced in the ordinary course of business. He is not bound to make inquiries, nor to act upon circumstances which would put an ordinarily careful man upon inquiry, unless they are of such a character as to impeach the honesty of the holder. Gross negligence even has been held insufficient to impeach his holding, "where a party has given consideration for the bill." *Goodman* v. *Harvey*, 4 Adol. & Ell., 870; *Belmont Branch of Ohio State Bank* v. *Hoge*, decided in this court last June Term, not yet reported, and cases there cited.

I do not deem the decision of this point necessary to the determination of this case, and therefore express no opinion upon it.

The only other ground of error urged is, that the court allowed a deduction from the amount of the proceeds of the judgment upon the security assigned to the plaintiffs "beyond the legal poundage and fees of the sheriff."

The gross amount proceeds of the notes were $1,920.74. From which were deducted by the sheriff:

| | | |
|---|---:|---:|
| For auctioneer's fees, | $108 | 79 |
| Rent, | 118 | 57 |
| Sheriff's bill, | 94 | 64 |
| Attorney's fees, | 100 | 00 |
| | $421 | 98 |

No special objection to any particular item was made, only the judge was requested to charge that no deduction could be made " beyond the legal poundage and fees of the sheriff." Therefore, if either or any part of either of the other items might properly be deducted, the objection fails.

In entering up the judgment no attorney's fees were included, and the judgment was not all collected from insufficiency of property. It was entirely proper then to deduct a reasonable compensation for the attorneys; not entirely to be governed by the fee bill, but a sum proper as between attorney and client.

The judgment should therefore be affirmed, with costs.

All concur except SMITH and HUNT, JJ.

Judgment affirmed.