63b 237
8ap 7

## HARGER and others *vs.* WILSON.

A note, valid in the hands of the holder, is property, which may be sold at any price.

The price paid, on the purchase of a promissory note, may go to the jury on the question of good faith; but it cannot, as a matter of law, be held to impeach the title of the holder who is otherwise a purchaser in good faith, for value, and without notice.

Where the maker has intentionally issued a promissory note and put it in circulation as a valid note, although induced to do so by the fraud of the payee, and the same is purchased by a third person for a valuable consideration and without notice, though at a discount greater than the lawful interest, the latter may maintain an action thereon as a *bona fide* holder.

The *bona fide* holder of a note which has been obtained from the maker by fraud, has no equity, as against such maker, to be protected beyond the amount of the advances he has made, upon the faith of the note. MULLIN, P. J., dissented.

APPEAL, by the defendant, from a judgment entered upon a verdict.

The action was brought to recover the amount of a promissory note made by the defendant, for $1000, with interest, dated May 25, 1869, payable seven months from date, at the Union National Bank, to William B. Nicholson, or bearer. The note was transferred by the payee, Nicholson, before maturity, to wit, the 27th of the same month, by his agent, one Spencer, to the plaintiffs, bankers and brokers, at Watertown, N. Y.

The grounds of defense set up in the answer were: 1. That the note was fraudulent in its inception, and without consideration, and was obtained of the defendant by the payee, Nicholson, and one J. Goodrich Scott, (together with five other notes of a like amount each,) and that the plaintiffs are not *bona fide* holders. 2. The note not having had a legal inception, and being without consideration, was negotiated to the plaintiffs at a usurious rate of interest, and is void. The interest was at the rate of twenty-six per cent per annum, $900 being the amount paid by the plaintiffs for the note.

The cause was tried at the June circuit, in Jefferson

county, 1871, before Justice DOOLITTLE and a jury. The fraud in the inception of the note was proven. Indeed it was not attempted to be disproved at the trial. The worthlessness of the patent right, the alleged consideration of the note, was shown by the testimony of several witnesses.

At the close of the evidence, several propositions were submitted to the court, with reference to the law of the case, by the defendant's counsel, which were overruled, and an exception allowed. The jury, under the direction of the court, rendered a verdict for the plaintiffs for $1143.74, on which judgment was entered, and from which the defendant appeals.

*B. Winslow,* for the appellant.

I. The counsel for the defendant requested the court to hold and decide, that the note in suit "having been obtained by the payee by fraud, when he transferred it to the plaintiffs for $900, it became usurious and void, and that the plaintiffs' purchase of the note at that price prevents their being *bona fide* holders." As to this request, the court held, "that assuming that the note was obtained by the payee of the maker, by the false pretenses alleged, and that the patent right was worthless, (referring to the consideration of the note,) its transfer by him (the payee) for $900 did not make the note usurious and void, and that the purchase of the note by the plaintiffs, of the payee, for the $900, did not prevent their being *bona fide* holders." This ruling was erroneous. If the patent right for the purchase of which the note was given, (without reference to the fraud by which it was obtained,) was worthless, the note was without consideration, and was void in the hands of the payee. It had no more validity in his hands, and payment could no more be enforced by him, than if it had been an accommodation note of the maker, or a note borrowed of the maker to negotiate. In *Powell* v. *Waters,*

Harger *v.* Wilson.

(8 *Cowen,* 669,) the court held, in approval of the case of
*Munn* v. *Commission Company,* (15 *John.* 44,) that in that
case "the question was held to be, whether the holder, at
the time of the negotiation of the note or bill, had such a
right to it as to entitle him, if it was then due, to main-
tain an action upon it against the drawers and indorsers.
If he could, then the discount of it at a higher rate than
the legal interest, might be defensible as a purchase; but
if he could not, then such discount would be illegal, as a
usurious loan of money." And, in the same case, it was
further held that a note made and indorsed for the pur-
pose of a fair discount at bank, if discounted by another
at an usurious rate, is void. The language of the court,
at page 687, is: "A note has no binding force or legal in-
ception, nor constitutes any contract, until delivered, and
in the hands of a *bona fide holder.*" It is not, therefore,
essential, to make the note void for usury, that the intent
to negotiate it at a usurious rate should exist at the time
of its execution or delivery for the purpose of negotiation.
A note without consideration, in the hands of a payee, is
without a legal inception. A consideration is essential, in
all cases, to support the validity of a bill or note, (*Story on
Prom. Notes,* § 187,) and want or failure of consideration
is a perfect defense to a note, as between the original par-
ties; such a note is a *nude pact.* (*Pearson* v. *Pearson,*
7 *John.* 26. *Frisbee* v. *Hoffnagle,* 11 *John.* 50. *Slade* v.
*Halsted,* 7 *Cowen,* 322.) The defendant claimed the right,
at the trial, to go to the jury upon the question, as to
whether the note was without consideration; and, as to
this, the learned judge ruled, in substance, that if the note
was without consideration, and the plaintiffs obtained it at
a usurious discount, they could still recover. If it was
without consideration, or had the jury so found, the
position of the defendant would be like that of an accom-
modation maker of a note for the benefit of a payee, which,
if discounted at a usurious rate of interest, would be void

as against the maker for usury. (2 *Denio,* 621. *Powell* v. *Waters, supra.* *Williams* v. *Storm,* 2 *Duer,* 52. *Clark* v. *Sisson,* 22 *N. Y.* 312. *Hall* v. *Earnest,* 36 *Barb.* 585, 588.) The ignorance of the plaintiffs in regard to the origin of the paper, does not affect the question, or change its character. (*Hall* v. *Wilson,* 16 *Barb.* 548. *Powell* v. *Waters, supra. Dowe* v. *Schutt,* 2 *Denio,* 624. *Holmes* v. *Williams,* 10 *Paige,* 326.) That the defendant intended to put his note in circulation, and to give title to it to the payee, did not make it valid in his hands. If nothing was paid, no title could be acquired by the payee, and hence there was no legal inception. If negotiated by him upon a usurious consideration, the holder or transferee would take it subject to all the equities which properly attach thereto, between the antecedent parties. (*Story on Prom: Notes,* § 190.)

II. The note was obtained by fraud. It was, for the same reasons before stated, unavailable in the hands of the payee. If the infirmity of a want of consideration did not exist, the fraud would avoid the note as between the original parties, and as to all subsequent holders, if transferred by the payee at a usurious rate of interest. "A note which has been negotiated by the maker, and might, if at maturity, be enforced against him by the holder, may be sold at a greater discount than the rate of seven per cent per annum, without involving the purchaser in the penalties of usury; but the note must be perfect and available to the holder, to make it saleable by him. The test is the right to maintain an action upon it against the parties to it, if it were then due." (*Powell* v. *Waters, supra. Hall* v. *Wilson, supra.*) "To be the subject of such sale, it must have a preëxisting validity. Its breath of life cannot be imparted through a usurious transaction." (*Hall* v. *Everest, supra.*)

III. The plaintiffs were not holders in good faith; the note did not have a legal inception; the payee could not enforce its collection; it was obtained by the plaintiffs of

Harger *v.* Wilson.

the payee at a discount, or shave, of $100, at a rate of interest equal to twenty-six per cent per annum. Neither the payee, nor his agent who conducted the negotiations for the transfer to the plaintiffs, known to them to be pecuniarily responsible, were required to indorse the note, or in any way to become liable for its payment. The transfer to the plaintiffs was not in the usual course of legitimate banking business. They did not, under such circumstances, become holders in good faith for a full and fair consideration, and are not entitled to the protection which the law gives to an innocent holder of negotiable paper, who, before maturity and for full value, receives it without notice of any defect in its inception. "To entitle the holder of negotiable securities, which have been obtained and put in circulation fraudulently, feloniously or without consideration to the benefit of this rule, he must have become such holder, in good faith, for a full and fair consideration, in the usual course of business, and without notice of the defect or infirmity in the title." (*Hall* v. *Wilson*, 16 *Barb.* 549, *and cases there cited.*) In *Bay* v. *Coddington*, (5 *John. Ch.* 54,) the court remarked: "I have not been able to discover a case in which the holder of negotiable paper, fraudulently transferred to him, was deemed to have as good a title, in law or equity, as the true owner, unless he received it not only without notice, but in the usual course of business, and for a fair and valuable consideration given and allowed." This view is sustained in *Goldsmid, Pres't &c.* v. *Lewis Co. Bank*, (12 *Barb.* 410.) In *Miller* v. *Race*, (1 *Burr.* 459,) Lord Mansfield laid stress upon the fact that the holder came into possession of the bill for a full and valuable consideration, as well as in the usual course of business. This is the language also of later cases. It follows, therefore, that the holder of negotiable paper, obtained by fraud from the maker, must have given a full and valuable consideration, to be protected. Will it be pretended that to exact a dis-

count of twenty-six per cent per annum, as in this case, is to pay a full and fair consideration? The good faith of the plaintiffs, as holders of the note, is impeached by the usurious character of the transaction through which they acquired title thereto. (*Ramsdell* v. *Morgan*, 16 *Wend.* 574. *Hall* v. *Wilson*, 16 *Barb.* 548. *Keutgen* v. *Parks*, 2 *Sandf.* 60.) *Ramsdell* v. *Morgan* was an advance of money at usurious interest, and the goods pledged. *Keutgen* v. *Parks* was not a sale, but a pledge of negotiable securities upon a loan at a usurious rate.

IV. The case of *Williams* v. *Tilt*, (36 *N. Y.* 319,) does not apply to commercial paper, although there is a *dictum* in the case seemingly in conflict with the case of *Ramsdell* v. *Morgan*, (16 *Wend.* 574,) before cited; it in fact only decides that a usurious agreement cannot be assailed by a stranger; that is, one not a party to it, nor claiming under the party injuriously affected by it. Certainly the maker of a promissory note, invalid for fraud, who is sought to be made liable for its payment, is privy to the contract. He is not a mere stranger, in any legal sense, to the act or agreement of transfer made by the party who committed the fraud, and which agreement would affect him injuriously. A surety is a borrower, within the meaning of the statute, and is entitled to avail himself of its provisions. (11 *Wend.* 329. 3 *Paige*, 528. 7 *Hill*, 393.) He is a party to the contract.

V. The defendant is not estopped from denying the *bona fide* holding of the plaintiffs, by reason of the former suit. To make the former suit a bar to the defense in this action, it should appear that the questions involved are between the same parties, or their privies. (*Doty* v. *Brown*, 4 *N. Y.* 70. *Goddard* v. *Benson*, 15 *Abb. Pr.* 191, *and cases there cited.*)

VI. It was error to refuse to instruct the jury and decide that the plaintiffs could only recover the amount they actually paid for the note. (*Cram* v. *Hendricks*, 7 *Wend.*

Harger *v.* Wilson.

569. *Mazuzan* v. *Mead*, 21 *Wend.* 285.) Equitably the defendant is at most a mere surety. As to him the note is a naked promise, without consideration. The payee negotiated it for his own benefit at a usurious rate of interest. Had it been a valid note, and had the payee indorsed it and been sued by an indorsee, while he could not have wholly defeated a recovery on the ground of having sold it at a greater discount than seven per cent, a recovery could have been had for the sum actually paid, with interest, and no more. A recovery for the full amount could be had of the maker in such case, because it would not lie in his mouth to say that the full value had not been paid by the indorsee, having himself received a full consideration. The limitation of the recovery by the indorsee against the indorser to the amount actually paid with interest is upon equitable principles, and upon still stronger equitable principles we insist that the recovery, if any can be had in this case, be limited in like manner.

*Moore & McCartin*, for the respondents.

I. The plaintiffs purchased the note in suit in the regular course of business, without any knowledge that the same had been obtained of the maker fraudulently, and are, therefore, *bona fide* holders. The term *bona fide* purchaser or holder, has reference to the standing of the holder or purchaser in respect to the original owner; that is, that he shall be free from any privity with the fraud, by having no part in it or notice of it, either actual or constructive, and where parting with value is proved, the amount of consideration paid is not otherwise important than as bearing on the question of actual or constructive notice. (*Gould* v. *Segee*, 5 *Duer*, 260. *Williams* v. *Tilt*, 36 *N. Y.* 319. *Steinhart* v. *Boker*, 34 *Barb.* 436.) 2. In the case of *Bay* v. *Coddington*, (5 *John. Ch.* 54,) the court held, that to entitle the holder of negotiable paper fraudulently transferred, to recover, he must receive it in the

ordinary course of business, without notice of the fraud, and for a fair and valuable consideration given or allowed, and then says: "It is the credit given to the paper and consideration *bona fide* paid on receiving it, that entitles the holder on grounds of commercial policy to such extraordinary protection, even in cases of the most palpable fraud." There is no pretense in this case that the plaintiffs had any notice that the note in suit was obtained by fraud; but, on the contrary, the uncontradicted evidence in this case shows they purchased this note in the ordinary course of business, in good faith, of a responsible party, and paid at the time of the purchase a fair and valuable consideration. 3. The note in suit was not what is known as "bankable paper," it having seven months to run before due, and the fact that the plaintiffs purchased it at a discount of $100, is not the slightest evidence of bad faith, as paper of this kind is the subject of sale at a discount, daily, in every city and town in the country.

II. This note was executed and delivered by the defendant to William B. Nicholson as an evidence of an existing debt, and for what he believed at the time was a good consideration, and the defendant thereby became liable to pay it to any one purchasing it. In *Van Duzer* v. *Howe,* (21 *N. Y.* 538,) Judge Denio in his opinion says: "The maker who by putting his paper in circulation has invited the public to receive it of any one having it in possession with apparent title, and he is estopped to urge the actual defect of title against a *bona fide* holder." 2. The object of the law is to secure the free and unembarrassed circulation of negotiable notes and bills of exchange, and the principle of protecting a *bona fide* holder of such paper who has paid value for it, is derived from and based upon a rule of equity. (*Vallett* v. *Parker,* 6 *Wend.* 615.)

III. The transaction in the purchase of this note, by the plaintiffs, of Spencer, was not usurious. To constitute usury, there must be, first, a loan; second, an intention to take

more than seven per cent; and, third, the taking or securing a sum greater than at and after the rate of seven per cent per annum. In this case it cannot be claimed there was a loan, but a sale, and in all cases where the contract is in form one of sale or exchange, if the value secured to the vendor was in good faith, although inadequate, there can be no usury, whatever the price may be. (*The Dry Dock Bank* v. *American Life Ins. and Trust Co.*, 3 *N. Y.* 344.) The defendant relies on the case of *Hall* v. *Wilson*, (16 *Barb.* 548,) as authority that this transaction was usurious. In that case there was no delivery, but the note was stolen from the desk of the maker and sold to a broker at a large discount; and as a promissory note has no legal inception until it is delivered to some one as an evidence of a subsisting debt, the court held it had its inception when transferred by the thief to the broker at a discount, and was therefore void for usury. In the case at bar, the note was delivered by the defendant to Nicholson as an evidence of a subsisting debt, and the courts distinguish between paper that is feloniously and that fraudulently put in circulation. (*Saltus* v. *Everett*, 20 *Wend.* 267. *Brower* v. *Peabody*, 3 *Kern.* 126.) 2. The defendant was not a party to the transaction of the purchase of the note by the plaintiffs, and cannot allege usury to avoid its payment. A usurious agreement cannot be attacked by one not a party to it. (*Williams* v. *Tilt*, 36 *N. Y.* 319.)

IV. There is no force in the objection that the plaintiffs were only entitled to recover the amount paid and interest. That rule could only apply, if at all, as between these plaintiffs and Nicholson, and they are entitled to recover of the maker the amount of the note and interest.

V. The ruling of the justice at the circuit, directing the jury to find a verdict for the plaintiffs, for the amount of the note and interest, was correct. The plaintiffs having established the fact that they were *bona fide* holders, that entitled them to judgment, and it would have been error to

have submitted to the jury the question whether the consideration of the note had failed or not.

TALCOTT, J.   This was an action on a promissory note. The defense was that the note was obtained of Wilson, the maker, by the fraud of one Nicholson, the payee, and one Scott.   The plaintiffs claimed to be *bona fide* holders, without notice, for value, which claim has been sustained by the verdict; but in reaching this result, two rulings were made by the court at the circuit, which were excepted to and are now claimed to have been erroneous. The note was for $1000, with interest.   It was purchased by the plaintiffs, who are bankers and brokers, before maturity, for the sum of $900; and it is claimed by the defendant's counsel that if the note was obtained from the defendant by fraud, so that the payee could not have recovered upon it from the maker, then that the purchase of it for less than the face was usurious; so that the plaintiffs cannot be *bona fide* holders, but are in fact holders under a usurious and void contract.   Without doubt there is some difficulty in reconciling the language of some of the cases with the proposition that the plaintiffs are entitled to recover.   It has been held that a note made for the purpose of being discounted, if taken at a rate of discount greater than seven per cent *per annum*, by a party having no notice of the purpose for which the note was made, may nevertheless be attacked for usury.   That a note made to be used in a certain manner, i. e., to be discounted at a certain bank, but diverted and sold at a discount greater than the legal interest, is usurious. (*Munn* v. *Commission Co.*, 15 *John.* 44.   *Powell* v. *Waters*, 8 *Cowen*, 669, *&c.*)   It is also claimed to have been decided that a stolen note sold to a party having no notice of any defect in the title, if sold at a deduction greater than lawful interest, is, for that reason, invalid in the hands of the holder.   (*Hall* v. *Wilson*, 16 *Barb.* 548.)   In this class of

Harger *v.* Wilson.

cases it is frequently said, as in the cases referred to, that the test is whether the note was valid in the hands of the payee so that he could have maintained an action upon it, and that if valid in this sense, it is valid in the hands of a *bona fide* purchaser, notwithstanding any defect in the title. There is no doubt, however, that a *bona fide* holder of commercial paper, for value, may recover, notwithstanding any defect in the title of the person from whom he derived it. Even though such person may have acquired it by fraud, theft or robbery. (*Story on Prom. Notes,* §§ 191, 192. *Hall* v. *Wilson, supra.*) It is claimed that a holder under a usurious contract cannot be a *bona fide* holder; and that the purchase for less than the amount purporting to be due upon the note on which the seller could not for any reason maintain an action against the maker, is usurious.

In the case of *Ramsdell* v. *Morgan,* (16 *Wend.* 574,) Mr. Justice Cowen says: " There is a solecism in the expression, ' a *bona fide* purchaser upon usury.' " But in that case the contract was clearly usurious. The defendant had not assumed to purchase the property, but had made an usurious loan upon the pledge and security of the property. The case of *Ramsdell* v. *Morgan* was followed in *Keutgen* v. *Parks,* (2 *Sandf. S. C.* 60;) but in that case, also, the contract was clearly usurious, and the commercial paper taken by the party who advanced the money was not purchased by him, but taken merely as a collateral security for the loan. Yet even these cases (*Ramsdell* v. *Morgan* and *Keutgen* v. *Parks*) are seriously questioned, and probably intended to be directly overruled in *Williams* v. *Tilt,* (36 *N. Y.* 319.) In the latter case it is held that "the term *bona fide* holder, or purchaser, has reference to the standing of the holder or purchaser in respect to the original owner; that is, he shall be free from any privity with the fraud by having no part in it or notice of it, either actual or constructive;" and that "the existence of usury in

the contract between the fraudulent purchaser and his vendee, who, without notice of the fraud, makes advances on the property, does not affect the relative rights existing between him and the original owner." This late case, decided by the court of last resort, seems to determine the question presented in this case. That was a question, as in the case of *Ramsdell* v. *Morgan*, as to what was necessary to constitute a *bona fide* holder of personal property which had been procured from the original owner by fraud; but the question is the same, or rather the position of the holder of commercial paper, *bona fide* and for value, is better than that of the holder of personal property; for such paper is valid, as we have seen, in the hands of such a holder, although stolen from the maker; whereas, a purchaser of personal property, however innocent, and whatever value he may have paid for it, acquires no title as against the original owner from whom it has been stolen. The fallacy of the argument of the appellant's counsel in this case is, that there can be no usury in the contract under which the plaintiffs claim to hold the note in suit. To constitute usury there must· be a loan, direct or indirect, and an intention to reserve or take more than the lawful rate of interest on a loan. A note valid in the hands of the holder is property, which may be sold at any price. In this· case, the note was offered for sale as a chattel, and was so sold and purchased, without indorsement. There was no intention, on the one side, of making a loan, or on the other, of borrowing money to be repaid. It may be said that this would be so in the case of a note made for the purpose of being discounted, but discounted at a greater rate than lawful interest, by a party ignorant of the true origin of the note; and that this was also the case in *Hall* v. *Wilson*, (*supra*.) But in such cases the note had not been delivered by the maker for the purpose of being put into circulation as a note. In *Hall* v. *Wilson*, the court say: " The mere act of signing the paper

without a delivery of it, as evidence of a subsisting debt, did not make it the note of the signer." The same is true of notes made to be discounted. And herein may, perhaps, be found a distinction which may enable the purchaser, at less than the face, to recover in the one case and not in the other. In the one case, the note has not been issued and put in circulation as a valid note. In cases like the one at bar, the maker has intentionally issued the note and put it in circulation as a valid note, although induced to do so by the fraud of the payee. In support of the proposition that he who purchases at a discount greater than lawful interest, a note which has been obtained from the maker by fraud, cannot be a *bona fide* holder, reference is made to the language of the opinions in many cases, to the effect that, in order to be a *bona fide* purchaser, the purchase must be for a full and fair consideration.

Justice Allen, in the opinion in *Hall* v. *Wilson*, says: "Although not necessary to the decision of this case, there is ground for saying that the consideration must be full and fair as well as valuable." He *apparently* meant by this to suggest that, as a matter of law, the purchaser of a promissory note, in order to be protected against a defense existing as against the payee, must have paid the full face of the note. This appears to us to be erroneous in principle and a misconstruction of the meaning of the authorities. Of course, we concede that the purchase of a note for much less than its value is a circumstance to go to the jury on the question of the good faith of the purchase, as a matter of fact. What is a full and fair consideration? Is it necessarily the face of the note? Is every man's note fairly worth the amount purporting to be secured by it? Manifestly not; and we apprehend the law can be guilty of no such absurdity as to declare peremptorily, that a purchaser has not paid a full and fair consideration for any note, who has not paid the face of it. Take the present case, for instance. The note in question

was for $1000, dated May 25, 1869, payable seven months after date. It was purchased by the plaintiffs, a few days after its date, for $900. The plaintiff who proved the purchase was cross-examined by the counsel for the defendant, as to the circumstances of the defendant, his occupation, &c., and among other questions was asked, "You knew him [the defendant] to be a man of limited means, didn't you, sir?" This cross-examination was apparently for the purpose of showing that it was unnatural and unlikely that the plaintiffs would have paid so much as they did for the note, as a *bona fide* business transaction.

So manifest is it, as a matter of common sense, that all notes are not equally valuable *pro rata*, that the defendant sought to throw suspicion upon the transfer in this case, by showing that the plaintiffs had paid more than the reasonable value of the note in the market. We think the price paid on the purchase of the note may go to the jury on the question of good faith, but that it cannot as a matter of law be held to impeach the title of the holder, who is otherwise a purchaser in good faith, for value, and without notice.

The other exception is to the ruling of the judge, that the plaintiffs were entitled to recover the full face of the note, with interest, and were not limited to a recovery of the amount they had paid for the note, with interest. This presents the question whether the holder of a note in good faith, for value, which has been obtained from the maker by fraud, is entitled, as against that maker, to be protected beyond his advances, with interest. That question we have decided at this term, upon an examination of the authorities. (*Huff* v. *Wagner.*) (*a*) A majority of the court think the *bona fide* holder of a note thus fraudulently obtained, has no equity as against the party defrauded, beyond the amount of the advances he has made upon the faith of the note. That protection, to

(*a*) Ante, p. 215.

this extent is all that justice or the policy of the law requires. If we are correct in this holding, then the court below erred in the ruling referred to, and the judgment should be reversed and a new trial ordered, unless the plaintiffs stipulate to deduct from their verdict the sum of $100, with interest from the date of the transfer of the note; in which case the judgment must be affirmed, with costs of the appeal to neither party.

JOHNSON, J., concurred.

MULLIN, P. J. I think the plaintiffs were entitled to recover the whole amount of the note, under the case of the *Park Bank* v. *Watson*, (42 *N. Y.* 490.) That case, it seems to me, reverses all the cases on which my brother TALCOTT relies.

Judgment reversed.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, June 4, 1872. *Mullin, Johnson* and *Talcott*, Justices.]