By the Court.—Vah Vorst, J.
The answer of the defendants alleges matter which, if satisfactorily established, would constitute a complete defence to the action on the note.
The concurrence of the two essential conditions, the obtaining the note by Dows through fraudulent inducements and without consideration, and the purchasing of same by plaintiff with notice of the fraud, or without paying therefor a valuable consideration, would avail *72 to prevent a recovery Tby him. As Dows himself could not, Tby reason of the fraud alleged, have acquired a valid title to the note, or have recovered thereon, neither could he place any other person, Tby a transfer of the note, in any "better position than himself, unless such person acted in good faith, and parted with a valuable consideration.
When an action is brought by an endorsee of a promissory note, the plaintiff is not bound in the first instance to prove the consideration paid for the note, nor the circumstances of good faith on his part in taking same.
The note imports by its terms to have been given for a good consideration, and the fact that he holds the same property endorsed, proves his legal title.
But the maker is entitled to prove, on the trial, fraud and total want of consideration at the time of the making and delivery of the note, and upon such proof being made, the burden is then cast on the plaintiff, to show that he was a bona-fide purchaser for a valuable consideration.
A reason for this rule is stated by Parke, B., in Bailey v. Bidwell (13 M. & W. 76), who says “that if the instrument in question was proved to have been obtained by fraud, or affected by illegality, that affords a presumption that the person guilty would dispose of the bill or note, and would place it in the hands of another person to sue upon it.” Here the plaintiff did not rest his case upon his presumptive legal rights as a holder for value arising from his possession under a claim of ownership, but affirmatively, before resting, offered evidence showing the consideration paid by him, and the circumstances under which he had taken the instrument.
This is, however, a question of order in the taking of proof on the trial, and to which no objection was made in this casé. But it had the effect, from the view taken by the judge of the plaintiff’s evidence, to entirely ex- *73 elude the evidence of the defendants in respect to the fraud and want of consideration in the making and delivery of the note.
According to the plaintiff’s evidence, the consideration paid by him was $1,000 in currency, and his own note at four months for an additional one thousand dollars. As the note purchased was by its terms payable in gold? the consideration paid, conceding that the one thousand dollar note was good and collectable, was about $250 less than the face of the note.
The case shows that on an inquiry by the court after the plaintiff had rested, the defendants’ counsel admitted that they had no further evidence to offer as to the transfer of the note to the plaintiff, but they claimed that the plaintiff was not a boná-fide holder of the note, and offered to prove the facts set forth in the fourth subdivision of the answer, and asked to be allowed to go to the jury on the question whether the plaintiff was a bona-fide holder.
The learned judge, without doubt, as the grounds of. his refusal of these offers and requests, regarded the ■consideration paid by plaintiff as good and valuable, and the evidence as establishing the good faith of the plaintiff, and accordingly held that under such circumstances no fraud of Dows’ could defeat the plaintiff’s right to recover.
But it seems to us that the question as to whether plaintiff was a bona-fide holder was, under the circumstances of this case, a question for the jury.
The payment of a valuable consideration tends to show good faith. It is, however, only presumptive, not conclusive, evidence.
There were considerations arising from the evidence which might have been properly considered by the jury in determining the good faith of the plaintiff. He was an employé of Dows’ at a small weekly salary ; before taking the note he made no inquiries. The transaction *74 took place in the employer’s office : for one-half of the face of the note he gave his own unsecured obligation at four months, when the note he bought had less than forty days to run. The note was left in the safe of his employer, until forwarded to Mew York to the attorney of his employer for collection, and when Ms own note matured it was not, and is not yet, paid, while the note he purchases has the security of the endorsement of his employer. These considerations are entitled to some weight on the subject of good faith. They may be consistent with a fair and boná-fide sale, but we apprehend that they are for the consideration of the jury. From the nature of the transaction, and the relation of plaintiff and Dows, all the evidence of the transfer which took place in the Boston office, would be substantially limited to their, own version of what transpired on the occasion. In Harger v. Nelson (63 Barb. 250), Taloott, J., says: “We think the price paid on the purchase of the note may go to the jury on the question of good faith.” In that case, a note for one thousand dollars, obtained from the maker through fraud, had been purchased by the plaintiffs, who were bankers and brokers, for $900.
It may reasonably be urged that in all judicious inquiries- where the “ good faith ” of a party in his action and conduct is a substantive matter, the determination of such question upon all the facts and circumstances is for the jury.
The payment by the plaintiff of one thousand dollars in currency, and the giving of his note, payable at a subsequent day, for a like amount, may have proceeded from a collusive understanding between the parties, not expressed in words perhaps ; for to persons standing to-each other in the relation in which plaintiff was placed to Dows, words may not have been necessary. A desire that plaintiff should purchase, simply expressed, might prove both significant and sufficient. That Dows had a *75 motive to get rid of the note, and to place the same in the hands of a third party "before maturity, so as to deprive the maker and endorser of their defence, may he inferred, without violence, from the fact that it was claimed by them that his possession was fraudulent, and that in the two actions which he had commenced on similar notes his fraud had been set up.
This case cannot be dismissed without alluding to the defendants’ claim that in no event should the plaintiff be allowed to recover more than $1,000, the currency claimed to have been paid by him. The character, quality, and value of the consideration paid, is involved in, and affects, the question of good faith.
The jury might have attached little value to the plaintiff’s unsecured and unpaid note given on the purchase.
It has been repeatedly adjudicated that a bona-fide holder of commercial paper, to which as between maker and payee there is a good defence, is entitled to be protected only to the amount of the value which he has paid. (Stalker v. McDonald, 6 Hill, 93 ; Cardwell v. Hicks, 37 Barb. 458; Huff v. Wagner, 63 Barb. 215; Harger v. Nelson, supra).
The verdict should be set aside and a new trial ordered with costs to abide the event.
Barbour, Oh. J., and Monell, J., concurred.