VAN BUREN COUNTY SAVINGS BANK, Appellant, v. STERLING WOOLEN MILLS COMPANY.

**Banks and banking:** ACCEPTANCE OF WORTHLESS CHECK. A banker, who was also treasurer of a corporation, kept his account on the bank books in the form of an account between the corporation and the bank. He became short in his accounts as treasurer, and on reorganization of the bank as a savings bank, and the giving of a check by the corporation in favor of the treasurer on the old bank for the amount which he owed the corporation, the treasurer agreed with the cashier of the savings bank that, inasmuch as the old bank did not have a credit with the savings bank equal to the amount of the check, this amount should be placed to the credit of the treasurer, as such, on the savings bank's books, and he should draw a check on that bank in favor of the old bank for the difference between the amount due the corporation from the old bank and the amount of the old bank's credit with the savings bank, which check should be charged to the account of the treasurer as such. A passbook was issued to the corporation, which showed the former, but not the latter check. The corporation had no direct account with the savings bank. Held, that as the cashier had no authority to accept the worthless check on the old bank and charge

the savings bank with the amount thereof, and as the corporation could not accept only that part of the arrangement which was favorable to it, it was not entitled to be credited for the amount of the worthless check without being debited with the amount of the other.

**Application of funds.** The treasurer of a corporation was short in his accounts, and overdrew his account as treasurer at plaintiff bank to pay checks on him by the corporation. By agreement with the bank, he deposited his own funds to protect the overdrafts, but also checked from his treasurer's account to pay his private debts. Later, without authority, he executed the note of the corporation to cover his shortage. The amount of his private funds deposited, minus the amount checked out to pay his private debts, left a remainder which was smaller than the amount of his shortage as treasurer by about the amount of the unauthorized note. Held, that as the deposits of private funds were by agreement made to protect the overdrafts as treasurer, the bank could not, as against the corporation, apply them to the deficit arising from the checks in payment of individual indebtedness, and hence could not recover on the note on the ground that the corporation had received the benefit thereof.

*Appeal from Van Buren District Court.*— HON. M. A. ROBERTS, Judge.

TUESDAY, NOVEMBER 22, 1904.

THE plaintiff brings this action to recover on four notes, two of which are admitted to have been made by the defendant, and are valid. The other two were executed by the defendant's treasurer without authority, as claimed, and are contested. By an amendment to its petition the plaintiff asks to recover the amount represented by the last notes on account of the defendant's use of the money, and asks that the notes be reformed by adding thereto the defendant's signature. The defendant pleads a counterclaim, the material part of which will appear by the following statement, compiled from the pleadings and the finding of facts by the trial court: Prior to the 15th day of January, 1894, George W. Sharp was the owner and operator of a private bank at Farmington, Iowa, called the " Van Buren County Bank."

For some time before that he had also been the treasurer of the defendant. On this particular date the plaintiff commenced business as a savings bank under the State law, with Sharp as its president and James W. Lapsley as its cashier; both having occupied those positions in the old bank, to which the plaintiff was in reality the successor. The business of the old bank was closed out by Sharp and Lapsley, through the plaintiff. The account between the defendant and its treasurer, Sharp, was kept on the books of the old bank under the heading, " Van Buren County Bank, in Account with Sterling Woolen Mills Co." Sharp continued as the president of the plaintiff and as the treasurer of the defendant until his death, in June, 1897. The manner of keeping his account with the defendant remained unchanged after the organization of the plaintiff up to the 10th day of May, 1894, at which time Sharp, as the defendant's treasurer, and as the Van Buren County Bank, owed the defendant $10,380. On this day the defendant drew a check for this amount on the old bank in favor of Sharp, as treasurer, and delivered it to him. At this time, however, the old bank had only $1,110, in round numbers, to its credit in the plaintiff bank, and as a matter of fact Sharp was short the balance due the defendant; but this situation was unknown to it until three years after the death of Sharp. After receiving the check, Sharp and the plaintiff's cashier, Lapsley, agreed that the amount thereof should be placed to the credit of Sharp, as treasurer, on the books of the plaintiff, and that Sharp, as treasurer, should draw his check on the plaintiff in favor of the old bank for $9,000, which should be charged to his account as treasurer on the plaintiff's books. This arrangement was carried out. A bank passbook was afterwards delivered to the defendant's secretary, headed, " G. W. Sharp, Treasurer, in Account with Sterling Woolen Mills Co." But, for the purpose of concealing the true situation of affairs, it showed only the charge of $10,380 against Sharp. The check for $9,000,

which he had drawn in favor of the old bank, and which had been charged to his account on the plaintiff's books, did not appear on the passbook delivered to the defendant. He also checked on this account for the payment of his private debts, the larger part of which was due the plaintiff. The total amount of such fund deposited was in excess of his indebtedness to the defendant on the 10th day of May, 1894. The defendant claims that it is entitled to credit for $10,-380, represented by its check, without any deduction on account of the $9,000 check, and also for the amount subsequently deposited by Sharp from his private funds, without deducting the amount checked therefrom for the payment of his debts to the plaintiff and others. The case was transferred to the equity side of the court, and referred to a referee, whose finding in favor of the defendant was confirmed by the district court. The plaintiff appeals.— *Affirmed.*

*Hollingsworth & Blood,* for appellant.

*W. E. Blake* and *Mitchell, Sloan & McBeth,* for appellee.

SHERWIN, J.— The facts found by the referee are substantially as set forth above, and are practically conceded; the contention being over the legal principles applicable

1. BANKS AND BANKING: acceptance of worthless checks.

thereto. The referee and the district court both found the defendant entitled to credit for the full amount of the check drawn by the defendant, and that the $9,000 check was illegal, and not a valid charge against the defendant. The acceptance of the defendant's check by the plaintiff, through its cashier, Lapsley, was expressly conditioned upon the agreement that the actual credit created thereby should be only the difference between that sum and the sum of $9,000, represented by the check drawn by Sharp as treasurer. In other words, while Lapsley consented to credit Sharp's account as treasurer

with the amount due the defendant from him, it was done only upon the condition that a check for $9,000 in favor of the old bank be deposited at the same time, and as a part of the same transaction, to be entered as a charge against that credit. It was presumed that this method of handling the transaction would fully protect the plaintiff, and at the same time assist Sharp in longer concealing his appropriation of the defendant's funds. Lapsley, as the plaintiff's cashier, had no right or authority to accept a worthless check on another bank, and charge the plaintiff with the amount thereof. Zane on Banking, section 160; *Clarke Nat. Bank v. Bank of Albion,* 52 Barb. 592; *Bank v. Bank,* 16 N. Y. 125 (69 Am. Dec. 678). Had he done so, he would not only have acted without authority, but would have been practicing a fraud upon his principal. Nor was the defendant, or Sharp, as its treasurer, entitled to credit for the full amount of the check. Neither the old bank nor Sharp had funds against which it could be charged; hence whatever right accrued to the defendant on account of the transaction arose from the agreement between Sharp and the plaintiff's cashier, Lapsley. It should be borne in mind in this connection that this was not a deposit of money, against which an unauthorized check was drawn, but a credit agreed upon by Lapsley and Sharp. If it be true, then, that the defendant's rights are based solely upon the agreement made at that time, and are to be measured thereby, it seems to follow as a sound proposition of law that the defendant cannot claim the benefit of that part of the agreement which is favorable to it and reject the rest. *Anderson v. Walker,* (Tex. Civ. App.) 49 S. W. Rep. 937; *Key v. Nat. Life Ins. Co.,* 107 Iowa, 446. The defendant had no direct account with the bank. Its account was with its treasurer, who, as such, opened the account with the bank. The defendant drew all checks on its treasurer, as it was required to do by its by-laws. True, these checks were made payable through the bank, and were in fact paid by the bank in the

first instance, but they do not appear to have been charged to Sharp's account as treasurer until he gave his check for the amounts so paid. The $10,380 check was drawn in favor of Sharp as treasurer and delivered to him, and it was he who negotiated with the plaintiff the amount of credit he should receive on account of the transaction. That he and Lapsley deliberately and fraudulently deceived the defendant admits of no doubt; but there was no misappropriation of funds by the plaintiff, for the reason that no money was deposited by the defendant or by Sharp for its benefit, and no credit was given the defendant or Sharp as its treasurer beyond the amount agreed upon by Sharp and Lapsley. The passbook delivered to the defendant (by whom does not certainly appear) was evidently intended to deceive, for, while it showed the true amount which Sharp owed the defendant, it did not show the true condition of his account with the bank. Sharp was not to receive a salary as treasurer, but it was the understanding that he should have the use of the defendant's money in his banking business; and under such an agreement it could not be expected that he would always have the entire fund on hand, either in cash or as a credit in the bank. But, however this may be, the credit in the passbook could only operate as an estoppel against the bank if it were found responsible for the deception, and no estoppel is pleaded or relied upon. It therefore follows that the judgment cannot be sustained on the theory advanced by the referee and adopted by the trial court.

But, notwithstanding this, the plaintiff is not entitled to a judgment against the defendant. By the terms of the agreement between Sharp and Lapsley, when the former's 2. APPLICATION OF FUNDS. account as treasurer was transferred from the old to the new bank Sharp was to make good the $9,000 shortage by deposits from his private funds from time to time. The defendant, having no knowledge of the shortage or of the true condition of its treasurer's account

with the bank, checked on its account as represented by its passbook, which resulted in frequent overdrafts. The referee found as a fact that Sharp undertook to protect these overdrafts by depositing his own funds from time to time as they occurred, until the total of such deposits amounted to $11,350. Of this sum $7,600 was deposited in different sums and at different times prior to and on the 29th day of September, 1894, $750 on December 31, 1894, and $3,000 March 30, 1895. From the 7th of November, 1894, to the 19th day of November, 1895, inclusive, Sharp drew checks amounting to $9,300 on his account as treasurer in favor of the appellant bank to reimburse it for money paid out on his account. Therefore at the time of the March 30, 1895, deposit of $3,000 he had drawn from his treasurer's account for his private use $950 more than his deposits from his private funds. On the 10th of October, 1896, he executed notes as defendant's treasurer aggregating the sum of $5,000, which were given to the appellant to cover a part of the shortage in his account as treasurer, and this sum was placed to his credit. He afterwards drew $3,000 more from this account for his private use. It appears, then, that his total deposits from private funds, treating the $5,000 credit of October 10, 1896, as such, aggregated $16,350, and the aggregate amount drawn therefrom for private use was $12,-300. Conceding that the defendant has had the benefit of the difference between these two sums, $4,050, the shortage of $4,661 found by the referee and trial court is not too large. If Sharp deposited the various sums specified for the payment of the defendant's overdrafts, as found by the referee, we think the defendant was and is entitled to the benefit of such deposits. They were made to reimburse the bank for the money it had paid out for the defendant, and it could not thereafter change the character of the transaction, and rightfully ask that such sums be applied elsewhere for its benefit.

The execution of the notes by Sharp as treasurer was

wholly unauthorized, and did not bind the defendant; nor does it appear that the defendant was benefited by the credit given Sharp on account thereof; hence the referee and the trial court rightly excluded them from consideration in determining the state of the account between the parties.

We reach the satisfactory conclusion that the judgment in this case should be and it is *affirmed*.